MARK A. WENGER *et al.*, Indiv. and on behalf of all persons similarly situated, Plaintiffs-Appellants, v. MORGAN M. FINLEY, Clerk of the Circuit Court, *et al.*, Defendants-Appellees (Neil F. Hartigan, Attorney General, Defendant and Intervenor-Appellee).

First District (2nd Division)   No. 1—88—3778

Opinion filed June 27, 1989.

Sidney Z. Karasik and Lionel Brazen, both of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield, *pro se* (Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellee Neil F. Hartigan.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Susan Condon, and Patricia M. Shymanski, Assistant State's Attorneys, of counsel), for other appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs appeal the granting of summary judgment in favor of defendants, challenging the constitutionality of the Illinois Not-for-Profit Dispute Resolution Center Act (hereinafter the Act) (Ill. Rev. Stat. 1987, ch. 37, pars. 851 through 856), and arguing that it violates section 12 of article I, section 13 of article IV, and section 1 of article II of the Illinois Constitution, as well as the due process and equal protection clauses of the United States and Illinois Constitutions; and that the trial court erred in deferring to the legislature's findings of fact.

The Illinois Not-for-Profit Dispute Resolution Center Act (Ill. Rev. Stat. 1987, ch. 37, pars. 851 through 856) became effective September 23, 1987. Section 1 of the Act sets forth legislative findings of fact:

> "[T]hat the resolution of certain disputes can be costly and time-consuming in the context of a formal judicial proceeding; and that mediation of disputes has a great potential for efficiently reducing the volume of matters which burden the court system in this State; and that unresolved disputes which individually may be of small social or economic magnitude are collectively of enormous social and economic consequence; and that many seemingly minor conflicts between individuals may escalate into major social problems unless resolved early in an atmosphere in which the disputants can discuss their differences through an informal yet structured process; and that there is a compelling need in a complex society for dispute resolution centers in which people can participate in creating lasting resolutions to ongoing conflicts; and that not-for-profit dis-

pute resolution centers can make a substantial contribution to the operation and maintenance of the courts of this State by keeping some matters from litigation and by providing a mechanism for resolving certain pending matters." (Ill. Rev. Stat. 1987, ch. 37, par. 851.)

A dispute resolution center (hereinafter DRC) is defined as an organization that is "organized to provide mediation services at no charge to disputants who agree to utilize its services," and disputes handled "shall include, but not be limited to, disputes referred from the court system." (Ill. Rev. Stat. 1987, ch. 37, par. 852(a).) All communications made during the resolution process, and all DRC memoranda, work product or case files are confidential. Ill. Rev. Stat. 1987, ch. 37, par. 856.

The Act provides that dispute resolution funds are to be established in (1) judicial circuits that include a county with a population in excess of 2 million inhabitants; and (2) in other judicial circuits, when the chief judge of that circuit finds that a DRC "would significantly enhance the administration of justice," and that a DRC "exists or should be created in the judicial circuit." (Ill. Rev. Stat. 1987, ch. 37, pars. 853(b)(1), (b)(2).) In judicial circuits in which a dispute resolution fund is established, "the clerks of the circuit court shall charge and collect a dispute resolution fund fee of $1, such fee to be paid by the party initiating the action at the time of filing the first pleading in all civil cases." (Ill. Rev. Stat. 1987, ch. 37, par. 853(c).) The fees are "assessable as costs, and shall be remitted by such clerk monthly to the county treasurers," who, in turn, shall disburse them to the dispute resolution fund. Ill. Rev. Stat. 1987, ch. 37, par. 853(c).

The chief judge of the judicial circuit administers the fund and is to make yearly disbursements to qualified DRCs within the judicial circuit. (Ill. Rev. Stat. 1987, ch. 37, par. 854(a).) Disbursements are "based on each center's proportionate share of the total number of cases resolved by all qualified centers in that circuit during the year prior to application"; however, no DRC may receive more than $200,000 in any one year, and amounts collected but not disbursed must be "paid to the county treasurer for the administration of justice in the judicial circuit." (Ill. Rev. Stat. 1987, ch. 37, pars. 854(b), (c)(1).) A DRC may also accept funds from other public entities or private sources. Additionally, the chief judge is responsible for establishing rules and standards pertaining to the operation of DRCs within the circuit. Ill. Rev. Stat. 1987, ch. 37, pars. 855(a), (b).

On November 12, 1987, plaintiffs filed the instant suit on behalf

of themselves and "all persons similarly situated," naming the clerk of the circuit court, his chief deputy, and the treasurer of Cook County as defendants; however, no class was certified. Plaintiffs alleged that the Act (1) violates their due process and equal protection rights in violation of the United States and Illinois Constitutions; (2) contravenes the prohibition against special legislation contained in article IV, section 13, of the Illinois Constitution; (3) offends article I, section 12, of the Illinois Constitution, which provides that "[e]very person *** shall obtain justice by law, freely, completely, and promptly"; and (4) violates the doctrine of separation of powers found in article II, section 1, of the Illinois Constitution. Plaintiffs sought declaratory and injunctive relief, an accounting, restitution, and attorney fees and costs.

The Illinois Attorney General was granted leave to intervene in the suit as a defendant, and the Chicago Bar Association was given leave to appear as *amicus curiae* on behalf of defendants. On December 9, 1988, the circuit court ruled on the parties' cross-motions for summary judgment, and held in favor of defendant, stating:

> "[T]he question presented is whether the fee paid to fund the dispute resolution center has any relation to the maintenance or operation of the circuit court system by reducing the burdens a litigant encounters in processing a case through that court system and the burden the court system itself bears by processing, monitoring, administering, and resolving civil disputes of all kinds?
>
> * * *
>
> Does the imposition of the fee in question, upon civil litigants who file a first pleading to support dispute resolution centers, not a part of the Illinois court system[,] 'improve the administration of justice thus benefitting every civil litigant?' Or, put another way, does the operation of a dispute resolution center, not a part of the Illinois court system, relate to the 'operation and maintenance of the judicial system?'
>
> * * *
>
> The establishment of an alternative method of dispute resolution may tend to reduce the number of cases filed or offer a potential for earlier resolution by non-judicial methods. Thus, persons who elect to litigate in the county system will encounter fewer cases with which to compete for judicial attention and disposition. The reduction of time that litigants suffer in trial delay *is* related to the maintenance and operation of the court system. Therefore, the Act can reasonably be said to ap-

ply to 'court purposes.'

* * *

*** [E]very litigant who files suit and pays a fee benefits from the existence of a dispute resolution system that potentially reduces the number of cases filed, or eventually required to be resolved, in the circuit court, thus affording the litigant an earlier resolution." (Emphasis in original.)
This appeal followed.

OPINION

■ As noted previously, this case came before the trial court on cross-motions for summary judgment. There were no contested issues of material fact and the case presented a pure question of law; therefore, summary judgment was appropriate. (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576.) Plaintiffs are challenging the facial validity of a statute and, in such a case, there is a strong presumption that the legislation is constitutional. (*People v. Walker* (1988), 119 Ill. 2d 465, 519 N.E.2d 890; *People v. Inghram* (1987), 118 Ill. 2d 140, 514 N.E.2d 977; *Bernier v. Burris* (1986), 113 Ill. 2d 219, 497 N.E.2d 763.) The party challenging the constitutionality of legislation bears the burden of "clearly establishing the constitutional violation." *Bernier*, 113 Ill. 2d at 227.

At issue is whether DRCs are sufficiently related to the maintenance and operation of the court system to survive a challenge to the $1 fee. Plaintiffs maintain that this case is controlled by *Crocker v. Finley* (1984), 99 Ill. 2d 444, 459 N.E.2d 1346, which struck a $5 filing fee used to fund a domestic violence shelter program, while defendants, defendant-intervenor and *amicus* (hereinafter collectively referred to as defendants) assert that this case is analogous to *Ali v. Danaher* (1970), 47 Ill. 2d 231, 265 N.E.2d 103, which upheld a $1 county law library tax on litigants.

In *Ali*, plaintiff challenged a $1 county law library fee, which was to be paid at the time of the filing of the first pleading in all civil cases. The fee was assessable as costs, and was to be remitted by the clerk of the court to the county treasurer and retained by him in a special fund designated as the "County Law Library Fund." The statute requiring the fee also provided that county law libraries "shall be freely available to all licensed Illinois attorneys, judges, magistrates and other public officers of such county, and to all members of the public, whenever the court house is open." (Ill. Rev. Stat. 1969, ch. 81, par. 81.) Plaintiff argued that the fee was really an unconstitutional tax in violation of equal protection and the separation

of powers doctrine, as well as section 19 of article II of the Illinois Constitution, which assures every person the right to obtain justice, by law, freely and without being obliged to purchase it. (*Ali*, 47 Ill. 2d at 234.) The court rejected these arguments, first noting that "a provision for fees relating to litigation is not offensive *per se* to separation of powers or to the prohibition against requiring the 'purchase of justice.' " (47 Ill. 2d at 235.) The court continued:

> "We do not consider it significant here that all persons paying the library fee might not actually use the library facilities in the particular litigation. Nor do we deem the library fee an unconstitutional imposition because a litigant may not request the use of the facilities. They are available to him and his attorney and anticipating their use is not unreasonable. Too, it is clear that the presence of such facilities is conductive to a proper and even improved administration of justice, which benefits every litigant.
>
> * * *
>
> We hold that the imposition of the library fee does not require an unconstitutional 'purchase of justice.' This holding follows other decisions in which this court has recognized that litigation may not be without lawful expense [citations]. The holdings illustrate, too, that such legislation is not violative of the constitutional separation of powers.
>
> * * *
>
> We are not persuaded by the plaintiff's argument that the library fee requirement violates section I of article IX, of the constitution of Illinois because it is a tax which is not equal or uniform as to the class upon which it operates. It is not uniform, it is contended, because the statute permits those litigants who join in 'a single pleading, paper or appearance' to pay a single library fee, whereas if they file a complaint or appearance separately each must pay the $1 fee. ***
>
> The plaintiff suggests no reason why we should declare the classification unreasonable." 47 Ill. 2d at 237, 238.

The court elaborated on this holding in *Crocker*. There, plaintiff argued that the $5 filing fee for petitioners for dissolution of marriage, which was collected to fund shelters and other services for victims of domestic violence, was unconstitutional and in violation of the due process and equal protection guarantees in the United States and Illinois Constitutions; the prohibition against special legislation in article IV, section 13, of the Illinois Constitution; and the right to obtain justice freely secured by article I, section 12, of the Illinois Con-

stitution. (*Crocker*, 99 Ill. 2d at 449.) The supreme court agreed, stating:

> "The salutary goals of our new domestic violence acts are not at issue in this case. Nor is the General Assembly's decision that the laws were sorely needed. Instead, the question presented is whether the legislature may impose a court filing fee on a limited group of litigants where the funds so collected go ultimately into the State Treasury to fund a general welfare program. ***
>
> We first address the lower court's decision and the plaintiffs' contention that the $5 fee conflicts with the Illinois constitutional right to obtain justice by law freely.
>
> * * *
>
> *** [C]ourt charges imposed on a litigant are fees if assessed to defray the expenses of his litigation. On the other hand, a charge having no relation to the services rendered, assessed to provide general revenue rather than compensation, is a tax. ***
>
> Statutes imposing litigation taxes, however, do not necessarily offend our State constitution. ***
>
> *Ali v. Danaher* illustrates that a litigation tax may sometimes be imposed. That case, however, does not control the case at bar. Instead, the present appeal compels us to consider a further question that prior cases do not adequately resolve. That is, for what purposes may litigants be taxed?
>
> * * *
>
> *** [In *Ali*], this court had no occasion to state that the tax is sound because its purpose is court related. Nevertheless, the relationship of county law libraries to the court system is clear. According to the statute authorizing the tax, funds collected for the libraries could only be disbursed on the order of a majority of a county's circuit court judges. [Citation.] The statute required that libraries supported by the tax be made freely available to 'all licensed Illinois attorneys, judges, magistrates and other public officers' [citation], as well as to other members of the public." (99 Ill. 2d at 451, 452, 453.)

The court then discussed cases which upheld statutes imposing fees on litigants who file jury demands, and noted that "[n]one of the cases required this court to comment on the obvious relationship between jury fees or taxes and the court system." (99 Ill. 2d at 454.) The court continued:

> "With each prior case involving a filing fee or tax collected

for a court-related purpose, there was no need to decide whether that purpose was a necessary element of the challenged statute's constitutionality. However, we now conclude that court filing fees and taxes may be imposed only for purposes relating to the operation and maintenance of the courts. We consider this requirement to be inherent in our Illinois constitutional right to obtain justice freely." (99 Ill. 2d at 454.)

The court concluded that the $5 tax "interferes unreasonably with plaintiff's access to the courts," stating:

"Dissolution-of-marriage petitioners should not be required, as a condition to their filing, to support a general welfare program that relates neither to their litigation nor to the court system. If the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts.

* * *

We find * * * that the relationship asserted is simply too remote to save the $5 tax from its constitutional shortcomings. If the domestic violence services are deemed sufficiently court related to validate the funding scheme, countless other social welfare programs would qualify for monies obtained by taxing litigants." 99 Ill. 2d at 455, 456.

Plaintiffs assert that an alternate dispute program is not provided for nor part of the judicial system in the Illinois Constitution and that the cases a neighborhood DRC would hear are typically not justiciable in the law courts; therefore, they argue, DRCs are not related to the judicial system. They also emphasize that DRCs may be funded by private sources, and they claim that such funding "is most uncharacteristic of a court-annexed institution." Plaintiffs also challenge the trial court's reliance on the legislature's finding "that the filing fee is directly related to the justice system," maintaining that there is not an unmanageable caseload in the civil calendar requiring diversion of cases to DRCs.

Defendants respond that DRCs will reduce the number of cases pending in the courts, thus shortening the amount of time it takes to reach a resolution for both those cases going to DRCs and those remaining in the court system. They contend that this improved efficiency is a direct benefit to the judicial system. They note, too, that as in *Ali*, the court administers the fund for the benefit of all litigants. Addressing plaintiff's claim that many disputes brought to DRCs are not justiciable, defendants point out that many such claims

are currently pending in the circuit court. They also cite authority that the trial judge cannot question the correctness of legislative judgment, so long as that judgment is, at a minimum, "fairly debatable." (*People v. Kohrig* (1986), 113 Ill. 2d 384, 498 N.E.2d 1158, *cert. denied* (1987), 479 U.S. 1073, 94 L. Ed. 2d 126, 107 S. Ct. 1264; *Bernier v. Burris* (1986), 113 Ill. 2d 219, 497 N.E.2d 763.) "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." (*Kohrig*, 113 Ill. 2d at 403.) Thus, defendants argue, the trial judge properly gave the legislature's findings of fact "substantial deference." *Bernier v. Burris*, 113 Ill. 2d 219, 497 N.E.2d 763.

■ Court filing fees may be imposed "for purposes relating to the operation and maintenance of the courts" (*Crocker v. Finley* (1984), 99 Ill. 2d 444, 454, 459 N.E.2d 1346), and, in section 1 of the Act, the legislature found that "there is a compelling need *** for dispute resolution centers" and that these centers "can make a substantial contribution to the operation and maintenance of the courts of this State." (Ill. Rev. Stat. 1987, ch. 37, par. 851.) Plaintiffs argue that the legislature was mistaken, and that DRCs are not at all related to the operation and maintenance of the courts. This court cannot give berth to such a contention, for our function "is limited to determining whether the legislation in question is constitutional, not whether it is wise as well" (*Bernier*, 113 Ill. 2d at 230); therefore, we hold that the trial court properly deferred to the legislature and found that DRCs are related to the operation and maintenance of the courts.

Plaintiffs also challenge the Act on the basis of due process and equal protection, as well as the prohibition against special legislation found in section 13 of article IV of the Illinois Constitution, arguing that the Act creates an arbitrary classification and imposes a fee for non-court purposes. They contend that DRCs are part of a general welfare program not related to the court system and that it is unconstitutional to impose the burden of funding them on litigants rather than upon taxpayers generally.

■ Defendants reply that a statute will withstand a challenge based on due process principles if it bears "a reasonable relationship to the public interest sought to be protected, and the means adopted *** [are] a reasonable method of accomplishing the chosen objective." (*Crocker v. Finley* (1984), 99 Ill. 2d 444, 456, 459 N.E.2d 1346.) Similarly, if there is a rational basis for a classification, a statute will withstand a challenge on the basis of equal protection or spe-

cial legislation. (*Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 483 N.E.2d 1245.)[1] There is a presumption in favor of the validity of legislation, and if the reasonableness of legislation is "fairly debatable," courts will defer to legislative judgment. (*Thillens, Inc. v. Morey* (1957), 11 Ill. 2d 579, 591, 144 N.E.2d 735.) As we have noted above, defendants correctly contend that the fee is imposed for a court-related purpose, and that there is a reasonable, nonarbitrary relationship between the purpose of the Act, which is to improve the efficient administration of the court system, and the means adopted, imposing a $1 fee on the party "initiating the litigation"; thus, the trial court properly upheld the Act on this basis.

Plaintiffs also urge that the Act violates the doctrine of separation of powers. They note that the Act assigns the chief judge of the circuit a number of administrative duties which are not judicially related. They also claim the Act conscripts the judiciary as a tax collector. In support of their thesis that the Act constitutes an impermissible violation of the separation of powers doctrine, plaintiffs rely on *People ex rel. Christiansen v. Connell* (1954), 2 Ill. 2d 332, 118 N.E.2d 259.

In that case, the court invalidated a divorce statute which required the petitioner to file a written statement reciting his intention to file a complaint not less than 60 days nor more than one year before so doing. Section 5 of that statute provided "that the judge may, after inspection of the statement of intention, invite the prospective parties and their counsel, if any, to confer with him in his chambers; that no testimony shall be taken at the conference or any record made of the statements of any party; that attendance shall be voluntary and that nothing therein is an authorization to compel the attendance of a party by process or order of court." (2 Ill. 2d at 336.) The court held that the statute violated section 19 of article II of the Illinois Constitution, which provides for a remedy for "all injuries

---

[1]"Special legislation confers a special benefit or privilege on a person or group of persons to the exclusion of others similarly situated. It discriminates in favor of a select group without a sound, reasonable basis. [Citations.] A denial of equal protection, on the other hand, is different. It is an arbitrary and invidious discrimination that results when government withholds from a person or class of persons a right, benefit or privilege without a reasonable basis for the governmental action. [Citation.] Legislation which confers a benefit on one class and denies the same to another may be attacked both as special legislation and as a denial of equal protection [citation], but under either ground for challenge it is the duty of courts to decide whether classifications are unreasonable [citation]." *Chicago National League Ball Club v. Thompson* (1985), 108 Ill. 2d 357, 367-68, 483 N.E.2d 1245.

and wrongs *** promptly and without delay." (2 Ill. 2d at 339.) The court also stated:

> "There is another constitutional objection which, in our opinion, is also fatal to the validity of the statute before us. There are many areas of conflict and of litigation in which the participation of a judge as mediator or conciliator might be desirable. The volume of personal injury litigation might be reduced, for example, or labor disputes averted, by preliminary mediation before a judge. It is arguable that the State should be able to make full use of its judiciary, wherever their services might be valuable. But that result cannot be reached unless our constitutional doctrine of separation of powers is first altered. Of course, as has been ably argued, the constitution does not require a rigid separation of powers, and a degree of flexibility is necessary if government is to function. But an understanding view of the purpose of our doctrine of separation of powers is not enough to justify the present provision. The function here required of a judge is too remote from normal judicial duties to be sustained.
>
> *** [Here,] *** the gap between the contemplated conference and a judicial hearing is broad. In the first place, there is nothing pending before the court to be decided. Decision is the heart of the judicial function. Without it, there can be no adjudication. 'The power to hear without the power also to adjudicate and determine the rights of the parties to such proceedings cannot be said to be the exercise of the judicial power as that term is used in the constitution of this State.' [Citation.] Moreover, no one, whether party or witness, can be required by judicial process to attend the conference. No record is to be made of what occurs at the conference and the conference may be *ex parte*. The pretrial conference, [citation] relied upon by analogy, occurs in the course of a pending lawsuit. The judge commands attendance, he does not invite. A record of the pretrial conference may be preserved. In our opinion, the function to be performed by the judge at the conference contemplated by the present statute cannot fairly be described as judicial." (2 Ill. 2d at 348-49.)

Plaintiffs assert that the challenged Act casts the chief judge in the role of rule maker with no power to adjudicate, thus infringing upon the separation of powers. They further argue that there is no good reason why the rules must be made by the chief judge, "except for the transparent purpose of giving the neighborhood dispute resolu-

tion center program the aura of being connected to the court system."

The separation of powers clause of the Illinois Constitution provides that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) This provision has been recognized as meaning that the whole power of two or more branches shall not be placed in the same hands. (*People v. Walker* (1988), 119 Ill. 2d 465, 473, 519 N.E.2d 890.) Defendants maintain that there is no violation of this provision, because the chief judge's rulemaking duties relate to the court's use of DRCs, thus facilitating the exercise of judicial power. They distinguish *Christiansen*, emphasizing that the statute in that case involved the judiciary in mediation prior to the filing of a lawsuit. They also note that in *Crocker*, the court cited judicial administration of the law library fund as a principal reason for approving the statute in *Ali. Crocker*, 99 Ill. 2d at 453.

As the trial court noted, section 7 of article VI of the Illinois Constitution provides that the chief judge of each circuit shall have general administrative duties. Moreover, statutes authorizing the court to create rules relating to the administration of justice have been upheld against constitutional challenges. (*People ex rel. Lasecki v. Traeger* (1940), 374 Ill. 355, 359, 29 N.E.2d 519 (statute conferring "broad and comprehensive" rulemaking power); *Diversey Liquidating Corp. v. Neunkirchen* (1939), 370 Ill. 523, 526, 19 N.E.2d 363 (statute authorizing court to make all rules "necessary or expedient for the proper administration of justice in that court").) The chief judge's rulemaking and administrative duties under the Act do not violate the doctrine of separation of powers because they do not " 'infringe upon the inherent powers of the judiciary.' " *People v. Taylor* (1984), 102 Ill. 2d 201, 207, 464 N.E.2d 1059, quoting *People v. Davis* (1982), 93 Ill. 2d 155, 161, 442 N.E.2d 855.

Plaintiffs also cite *Orenic v. Illinois State Labor Relations Board* (1989), 127 Ill. 2d 453, in support of their argument. In that case, four chief judges of Illinois circuit courts sought a writ of prohibition or *mandamus* against the Illinois State Labor Relations Board, arguing that counties are not joint employers of the circuit courts' nonjudicial employees for purposes of collective bargaining under the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1601 *et seq.*). The court agreed, saying that although a county pays the salaries of nonjudicial employees in the judicial branch, "the State, personified by the chief judge of each circuit, is their employer." (*Orenic*, 127 Ill. 2d at 476.)

"Counties have the power and duty to set and pay salaries of circuit courts' nonjudicial employees [citation], but this authority is tempered by the courts' responsibility to administer justice and their retention of inherent power 'to protect themselves and the public they serve against default of their constitutional obligations' so that they may 'perform their judicial functions with efficiency, independence and dignity' [citation]. The retained power of the courts includes power to 'require production of the facilities, personnel and resources reasonably necessary' to the court's operations. [Citation.]

Thus, not only are nonjudicial employees of a court the employees of a State agency rather than a county, but even the counties' salary-setting and facilities-providing function is subject to the courts' own ultimate power to ensure reasonable adequacy. Except for setting and paying salaries and providing facilities subject to ultimate court power, the counties are entitled to no other role in regard to the courts' nonjudicial employees that might arguably be considered the role of a joint employer. And, as we have previously stated, the Illinois Constitution contemplates '[o]nly one unified court system operating statewide' and 'does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity.' [Citations.]"
(127 Ill. 2d at 479-80.)

Plaintiffs contend that "the designation of the county treasurer to receive, collect and disburse the $1 extra filing fees, is inconsistent with the rationale in *Orenic* of a statewide unified judicial system," and they maintain that the State treasurer should perform these duties.

The court in *Orenic* was clearly concerned with a local entity asserting "control of the number, salary, or employment conditions of court personnel" (127 Ill. 2d at 477), and thus interfering with the courts' administration of justice. The Act at issue in this case does not present the same concerns. As discussed previously, the chief judge, and not the county treasurer, administers the fund, makes yearly disbursements to qualified DRCs, and establishes rules and standards pertaining to the operation of DRCs within the circuit. (Ill. Rev. Stat. 1987, ch. 37, pars. 854(a), (b), 855(a), (b).) Thus, it is clear that the chief judge will determine how DRCs will be used to improve the efficient administration of the courts.

■ Finally, plaintiffs direct our attention to the minutes of the legislative debates on the Act, urging that they "reveal[ ] its true

purpose, as well as certain misrepresentations by some of the sponsors." Initially, we note that it is well settled that courts may consider the legislative history of an enactment in seeking to ascertain the intent of the legislature only when that intent cannot be determined from the statutory language itself (*Check Inn Lounge, Inc. v. Kozubowski* (1987), 164 Ill. App. 3d 1023, 1032, 518 N.E.2d 442; *Waste Management of Illinois, Inc. v. Environmental Protection Agency* (1985), 137 Ill. App. 3d 619, 627, 484 N.E.2d 1128), and that here the legislature has clearly expressed its intent in section 1 of the Act (Ill. Rev. Stat. 1987, ch. 37, par. 851). That statement of intent is the true purpose of the Act. Moreover, separation of powers principles preclude us from entertaining plaintiff's claim that sponsors of the Act made misrepresentations to the General Assembly. Ill. Const. 1970, art. IV, §12 ("A member [of the General Assembly] shall not be held to answer before any other tribunal for any speech or debate, written or oral, in either house").

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BILANDIC, P.J., and DiVITO, J., concur.