17 May 2000

No. 2--99--0243 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

LAURA MELLON, ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

)

v. ) No. 98--CH--915 

) 

SALLY COFFELT, Clerk of the )

Circuit Court of Lake County, )

and
 JUDY BARR
 TOPINKA, Treasurer )

of the State of Illinois, ) Honorable

) Wallace B. Dunn,

Defendants-Appellees. ) Judge, Presiding.

                                                                 

JUSTICE GEIGER delivered the opinion of the court:

This appeal arises out of the trial court's dismissal of the plaintiff's complaint challenging the constitutionality of section 2--1009A of the Code of Civil Procedure, which imposes a surcharge on the filing fee in civil litigation to fund court-annexed mandatory arbitration.  735 ILCS 5/2--1009A (West 1998).  On appeal, the plaintiff argues that section 2--1009A violates the following clauses of the 1970 Illinois Constitution: the uniformity clause (Ill. Const. 1970, art. IX, §2), the free access clause (Ill. Const. 1970, art. II, §12), the due process clause (Ill. Const. 1970, art. I, §2), and the equal protection clause (Ill. Const. 1970, art. I, §2).

I.     BACKGROUND

The court-annexed mandatory arbitration system (the System) was created by the Illinois legislature in 1986 and codified at sections 2--1001A through 2--1009A of the Code of Civil Procedure.  735 ILCS 5/2--1001A through 2--1009A 
(West 1998).  Section 2--1001A provides that "the Supreme Court ***, by rule, may provide for mandatory arbitration of such civil actions as the Court deems appropriate in order to expedite in a less costly manner any litigation wherein a party asserts a claim not exceeding $50,000." 735 ILCS 5/2--1001A (West 1998).  The legislature left many of the provisions regarding the administration of the System, including the appointment of arbitrators, the procedures for rejecting an arbitration award, and the determination of expenditures for the program, to the discretion of the Illinois Supreme Court.  See 735 ILCS 5/2--1002A through 2--1004A, 2--1007A (West 1998).

With regard to funding the System, the legislature has provided that, in counties that are authorized by the supreme court to utilize mandatory arbitration and that have a population of less than 3 million inhabitants, the clerk of the circuit court shall charge and collect an arbitration fee of $8

"at the time of filing the first pleading, paper or other appearance filed by each party in all civil cases ***.  Arbitration fees received by the clerk of the circuit court *** shall be remitted within one month after receipt to the State Treasurer for deposit into the Mandatory Arbitration Fund, a special fund in the State treasury for the purpose of funding mandatory arbitration programs *** with a separate account being maintained for each county."  735 ILCS 5/2--

1009A (West 1998).

The Illinois Supreme Court has enacted several rules pertaining to the operation and effect of the System, including the types of actions subject to mandatory arbitration (155 Ill. 2d R. 86), the appointment of arbitrators (177 Ill. 2d R. 87), the scheduling and conduct of the hearings (134 Ill. 2d R. 88; 166 Ill. 2d R. 90), discovery (166 Ill. 2d R. 89), and the tendering and rejecting of an award (166 Ill. 2d Rs. 92, 93).  Similarly, the Nineteenth Judicial Circuit, of which Lake County is a part, has enacted rules for the administration of the System, including a rule stating that all civil actions that are exclusively for money in an amount exceeding $5,000, but not exceeding $30,000, shall be subject to mandatory arbitration.  See 19th Judicial Cir. Ct. R. 17.01(c) (eff. January 2, 1997).  There is no doubt that the System is an integral part of our court system.

The plaintiff alleges that she is a member of a class of persons filing civil cases in Lake County who are charged an $8 arbitration fee but who cannot use the System because it is unavailable to parties filing actions that are not exclusively for money damages.  All parties filing civil cases in Lake County are charged an arbitration fee of $8 despite whether the party may utilize the System.  The plaintiff objects to having to pay the $8 fee when she filed a proceeding for a guardianship of a minor because she does not have the option of utilizing the System in litigating her guardianship proceeding.

The plaintiff filed a complaint alleging that the arbitration fee, imposed pursuant to section 2--1009A, is an unconstitutional tax under the uniformity (article IX, section 2), free access (article II, section 12), due process (article I, section 2), and equal protection (article I, section 2) clauses of the 1970 Illinois Constitution.  The plaintiff also filed a motion for class certification, which was never ruled upon by the trial court.  The trial court granted the defendants' motion to dismiss and denied the plaintiff's motion for summary judgment.

On appeal, the plaintiff appears to argue that the constitutionality of the fee is subject to the strict scrutiny test, and that, even if the rational relation test is applied, the fee nevertheless fails to pass constitutional muster.  We first consider whether to apply the rational relation or strict scrutiny test in determining the constitutionality of section 2--1009A.

II.     THE APPROPRIATE CONSTITUTIONAL TEST

The plaintiff argues that the constitutionality of the fee should be analyzed under a strict scrutiny test.  When a statute imposes a direct impediment to the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests.  See 
Boynton v. Kusper
, 112 Ill. 2d 356, 369 (1986).  The courts will subject legislation to such strict scrutiny if the statute at issue impinges upon a fundamental right.  
Harris v. Manor Healthcare Corp.
, 111 Ill. 2d 350, 368 (1986).  
The plaintiff appears to argue that the fee impedes the plaintiff's ability to litigate her guardianship proceeding and, therefore, should be subject to strict scrutiny.  The premise of the plaintiff's argument is that a proceeding concerning the guardianship of a minor necessarily involves a fundamental right.  It is in this faulty premise that the plaintiff's quest for the application of strict scrutiny fails.

Only rights " 'that lie at the heart of the relationship between the individual and a republican form of nationally integrated government' " are deemed to be fundamental, and only a few rights have been selected for this esteemed status.  
Harris
, 111 Ill. 2d at 368, quoting 
People ex rel. Tucker v. Kotsos
, 68 Ill. 2d 88, 97 (1977).  One example of a fundamental right is the right to marry.  
Boynton
, 112 Ill. 2d at 368.

In 
Boynton
, the court analyzed under strict scrutiny a statute that required county clerks to pay $10 of the fee collected for marriage licenses into a fund for domestic violence shelters.  The plaintiff class consisted of individuals who had applied for marriage licenses and were advised that the license would not be issued unless the entire fee was paid.  The plaintiffs argued that the fee violated the due process and uniformity clauses of the Illinois Constitution in that those who might benefit from the domestic violence shelters, 
i.e
., those not applying for marriage licenses, were not being taxed.

Although the right to marry is fundamental, the court reasoned, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may be imposed.  
Boynton
, 112 Ill. 2d at 368.  The court held, however, that the tax imposed by the statute in question "singled out marriage as a special object of taxation" and, therefore, was subject to the heightened test of strict scrutiny and not to the lesser rational relation test.  
Boynton
, 112 Ill. 2d at 369.  The court also held that the State failed to demonstrate a compelling state interest that would satisfy the strict scrutiny test and held the tax unconstitutional.   
Boynton
, 112 Ill. 2d at 371.

In this case, there is nothing in the record to suggest the exact nature of the guardianship proceeding filed by the plaintiff.  The plaintiff may have filed a guardianship proceeding for any number of reasons, including the need to probate a personal injury settlement, which would clearly not implicate any fundamental rights.  In short, we have found nothing in any constitutional jurisprudence to suggest that a proceeding involving the guardianship of a minor 
per
 
se
 implicates a fundamental right.

When the statute under consideration does not affect a fundamental constitutional right, the appropriate level of scrutiny is the rational relation test.  
Harris
, 111 Ill. 2d at 368.  Under the rational relation test,  a statute will be upheld if it bears a rational relation to a legitimate legislative purpose and is neither arbitrary nor discriminatory.  
Harris
, 111 Ill. 2d at 368.  As long as there is a conceivable basis for finding a rational relationship, the law will be upheld.  
Harris
, 111 Ill. 2d at 368. 

We hold that the appropriate test to apply in reviewing the constitutionality of the arbitration fee is the rational relation test.
  See 
Zamarron v. Pucinski
, 282 Ill. App. 3d 354 (1996) (constitutionality of court filing surcharge to fund court automation analyzed under rational relation test); see also 
Ali v. Danaher
, 47 Ill. 2d 231 (1970) (constitutionality of court filing surcharge to fund law library analyzed under rational relation test).  Having determined the appropriate test, we now turn to the plaintiff's constitutional challenges under the uniformity, equal protection, free access, and due process clauses.

III.    THE UNIFORMITY AND EQUAL PROTECTION CLAUSES

The plaintiff argues that the fee violates the uniformity (article IX, section 2) and equal protection (article I, section 2) clauses of the 1970 Illinois Constitution.  The uniformity clause provides, "In any law classifying the subjects or objects of non-

property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly."  Ill. Const. 1970, art. IX, §2.  The uniformity clause was designed to enforce minimum standards of reasonableness and fairness as between groups of taxpayers.  
DeWoskin v. Loew's Chicago Cinema, Inc.
, 306 Ill. App. 3d 504, 518 (1999).

Defendant Topinka correctly notes that the plaintiff "has not provided any coherent uniformity clause analysis."  The defendant's description of the plaintiff's uniformity clause analysis is generous at best.  From a review of the plaintiff's argument, it is unclear precisely what classification she is alleging is unreasonable.  At one point in her brief, the plaintiff suggests that it is unreasonable to charge only those taxpayers who file litigation because, if the System resulted in a less burdened court docket, then the community at large would benefit.  Followed to its natural conclusion, this argument suggests that the fee is underinclusive.  At another point in her brief, the plaintiff contends that there is a real and substantial difference between those litigants in Lake County who may use the System and those who may not.  This latter argument suggests that the plaintiff is arguing that the fee is overinclusive.  On account of the contradictory nature of the plaintiff's arguments, and the plaintiff's failure to fully articulate her arguments in a logical and coherent fashion, the plaintiff has waived the argument that the fee violates the uniformity clause.  177 Ill. 2d R. 341(e)(7) (West 1998).

However, the waiver doctrine operates as a limitation on the parties, not on the courts.  
Country Mutual Insurance Co. v. Hagan
, 298 Ill. App. 3d 495, 507 (1998).  Although the issue is waived, we may address it based on our obligation to achieve a just result and maintain a uniform body of precedent.  
Country Mutual
, 298 Ill. App. 3d at 507.  In this case, we believe that it is in the interest of justice to consider the enumerated challenges to the statute, and we note that we are able to do so without the aid of cogent appellate argument.  Therefore, we choose to address this issue, waiver notwithstanding.

To survive scrutiny under the uniformity clause, a nonproperty tax classification must be based on a real and substantial difference between the people taxed and those not taxed, and the classification must bear some reasonable relationship to the object of the legislation or to public policy.  
Searle Pharmaceuticals, Inc. v. Department of Revenue
, 117 Ill. 2d 454, 468 (1987).  The uniformity requirement, as traditionally understood, may be violated by classifications that are either underinclusive or overinclusive.  
 
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 250 (1996).  The scope of a court's inquiry under the uniformity clause is relatively narrow.  
Allegro
, 172 Ill. 2d at 250.  A person challenging a nonproperty tax classification under the uniformity clause has the burden of showing that it is arbitrary or unreasonable, and if a state of facts can reasonably be conceived that would sustain the classification, it must be upheld.  See 
Allegro
, 172 Ill. 2d at 250-51.

Upon a good-faith uniformity challenge, the taxing body bears the initial burden of producing a justification for the classifications.  
Allegro
, 172 Ill. 2d at 255.  Once the taxing body has provided a sufficient justification, the opponent has the burden of persuading the court that the justification is unsupported by the facts.  
Allegro
, 172 Ill. 2d at 255.  This the plaintiff has not done.

The common characteristic linking the individuals in the plaintiff's proposed class is that, although these individuals may partake in litigation in the circuit courts, they may not avail themselves of the System because they have filed suits requesting relief other than money damages.  The defendants respond that the plaintiff and the proposed members of the class are  benefitted by the reduced backlog in the court docket as a result of cases being disposed of via the System.  We note that not all persons burdened by a tax must be benefitted in the same way.  
Forsberg v. City of Chicago
, 151 Ill. App. 3d 354, 365 (1986).

The defendants' rationale finds support in the language of the statutory scheme.  As noted above, section 2--1001A provides that mandatory arbitration may be implemented "to expedite in a less costly manner" certain types of civil litigation.  See 735 ILCS 5/2--1001A (West 1998).  The plaintiff has not introduced evidence showing that the asserted justification for imposing the fee upon the plaintiff and the proposed class members is factually erroneous.  See 
Allegro
, 172 Ill. 2d at 260. 

Moreover, whether there are differences between those litigants who may use the System and those who may not is irrelevant in this case.  The relevant question is not whether the differences among litigants are real and substantial but, rather, whether the differences are so great that the legislature's decision to impose the fee upon all litigants in civil cases as a single class bears no reasonable relationship to the object of the fee.  See 
Allegro
, 172 Ill. 2d at 254.

We conclude that the State has submitted a legally sufficient justification for imposing the fee on the members of the proposed class who file litigation in the Lake County circuit court.  The litigants paying the fee all use the same court system, namely, the same judges, clerk's office, buildings, law library, and all the corresponding litigation support in the circuit court.  We cannot say as a matter of law that imposing the fee upon litigants who do not use the System bears no reasonable relationship to the object of the fee.  See 
Allegro
, 172 Ill. 2d at 258.  Accordingly, the trial court properly granted the defendants' motion to dismiss as to the alleged violation of the uniformity clause.

The uniformity clause imposes more stringent limitations than the equal protection clause on the legislature's authority to classify the subjects and objects of taxation.  
Allegro
, 172 Ill. 2d at 249.  " 'If a tax is constitutional under the uniformity clause, it inherently fulfills the requirements of the equal protection clause.' "  
Allegro
, 172 Ill. 2d at 250, quoting 
Geja's Café v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 247 (1992).  Because we have determined that the arbitration fee does not violate the uniformity clause, we also reject the plaintiff's suggestion that the fee violates the equal protection clause.

 
IV.     THE FREE ACCESS AND DUE PROCESS CLAUSES

The plaintiff argues that the fee violates the free access (article II, section 12) and due process (article I, section 2) clauses of the 1970 Illinois Constitution.  Due process requires that the legislation bear a reasonable relationship to a public interest and that the means adopted are a reasonable method of accomplishing that objective.  
Zamarron
, 282 Ill. App. 3d at 358.  The free access clause qualifies the due process standard by imposing the additional requirement that court filing fees relate to the operation and maintenance of the court system.  
Crocker v. Finley
, 99 Ill. 2d 444, 454 (1984).  Thus, if legislation pertaining to court fees survives constitutional scrutiny under the free access clause, the broader concept of due process is necessarily satisfied.  
Zamarron
, 282 Ill. App. 3d at 358.

The free access clause provides, "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation.  He shall obtain justice by law, freely, completely, and promptly."  Ill. Const. 1970, art. I, §12.  The free access clause protects litigants from unreasonable fees that interfere with their right to a remedy in the law or that impede the administration of justice.  
Lee v. Pucinski
, 267 Ill. App. 3d 489, 494-95 (1994). The constitution does not guarantee the right to litigate without expense but simply protects from the imposition of terms that unreasonably and injuriously interfere with the right to a remedy in the law or impede the due administration of justice.  
Zamarron
, 282 Ill. App. 3d at 359
.  If the reasonableness of given legislation is fairly debatable, then the courts will defer to the decision of the legislature.  
Zamarron
, 282 Ill. App. 3d at 359.

When faced with a challenge to the validity of a statute under the rational relation test, there is a strong presumption that the statute is constitutional.  
Zamarron
, 282 Ill. App. 3d at 358.  The plaintiff bears the burden of clearly establishing the alleged constitutional violation.  
Wenger v. Finley
, 185 Ill. App. 3d 907, 911 (1989).

The plaintiff argues that the court's holding in 
Crocker 
supports her contention that the arbitration fee violates the free access clause.  In 
Crocker
, the court struck down a $5 tax, imposed upon those filing petitions for dissolution of marriage, that was used to fund a domestic violence shelter program.  Applying the rational relation test, the court held that the relationship between filing a petition for dissolution of marriage and domestic shelters was too remote to uphold the tax.  
Crocker
, 99 Ill. 2d at 455.  U
sing court fees to fund a general welfare program, the court reasoned, violated the free access and due process clauses by imposing an unreasonable burden on litigants.  
Crocker
, 99 Ill. 2d at 455.  The court concluded that the tax at issue interfered unreasonably with access to the courts.  
Crocker
, 99 Ill. 2d at 455.

It is clear that the holding in 
Crocker
 is distinguishable from the case at hand.  The 
Crocker
 court did not suggest any distinction among the various divisions of our court system when evaluating the constitutionality of a court fee provision.  The court discussed the parameters of the free access clause in terms of the fees used for the court system at large.  See 
Zamarron
, 282 Ill. App. 3d at 359.  Thus, the holding and analysis in 
Crocker
 do not support the idea that, in order to fund a particular division of the court system, the revenue may not come from filing fees paid by litigants in other divisions of the court system.  In arguing that the fee imposed on nonarbitration cases is unconstitutional, this is really what the plaintiff is advocating.

The basis for the court's holding in 
Crocker
 was that the $5 fee was too remote from any court-related purpose.  In the present case, however, the plaintiff concedes that the fees collected are arguably court related.  As such, we find that the situation presented here is more analogous to the issues before the court in 
Zamarron
 and in 
Ali
.

In 
Ali
, the court upheld a $1 fee imposed on every litigant for the maintenance and operation of the county law library as constitutional.  The court determined that it was irrelevant that all persons paying the library fee might not use the library facilities.  The court found that the presence of the library was conducive to the administration of justice and may have constituted an improvement to the court system.  
Ali
, 47 Ill. 2d at 237.

At issue in 
Zamarron
 was a public act that, among other things, imposed a surcharge on the civil litigation filing fee to fund court automation.  The plaintiff class members argued that the act was unconstitutional because the increased fees were used to finance the criminal and "quasi-criminal" courts.  
Zamarron
, 282 Ill. App. 3d at 356-57.

At trial, the court granted the defendants' motion for a directed finding.  On appeal, the plaintiffs argued that the clerk may collect only reasonable fees that are necessary to finance the maintenance and operation of the courts.  The plaintiffs argued that the act violated the free access and due process clauses of the Illinois Constitution in that funds obtained via the civil justice system may not be used to finance expenses generated by the criminal justice system.  
Zamarron
, 282 Ill. App. 3d at 359.

The court refused to extend the holding in 
Crocker
 to find that filing fees generated from a particular division of the court system may be used solely to finance the operations of that division.  The court held that the statutory scheme was more similar to that in 
Ali
 than to that in 
Crocker
.  The court found that the existence and proper functioning of the criminal courts benefitted the overall administration of justice.  
Zamarron
, 282 Ill. App. 3d at 360.

The court noted that the concept of a unified court system was embodied in the state constitution.  The court held that the provisions of the state constitution created a single integrated trial court structure, thereby cloaking the circuit courts with jurisdiction to adjudicate all controversies.  
Zamarron
, 282 Ill. App. 3d at 360.  The court concluded that the plaintiffs did not establish that a constitutional violation occurs when funds collected through the civil justice system are used to finance the court system as a whole.  
Zamarron
, 282 Ill. App. 3d at 360.  The lynchpin of the issue concerned whether the funds obtained from the court automation surcharge were being used for non-court-related purposes.  
Zamarron
, 282 Ill. App. 3d at 362.  Because the plaintiffs had failed to point to any such evidence, the court affirmed the trial court's directed finding in favor of the defendants.

Similarly, in the present case, the existence and proper functioning of the System may benefit the overall administration of justice.  If we were to adopt the position advanced by the plaintiff and mandate that fees paid by litigants in a particular division (
i.e.
, probate, criminal) be allocated solely to the division of the court system to which each litigant is assigned, then we would be creating a fragmented, rather than unified, court system.  Our constitution has established a unified court system, and there is no constitutional violation when funds are collected via one type of filing and then used to finance other aspects of the court system.  See 
Zamarron
, 282 Ill. App. 3d at 360.

We note that a surcharge to a court filing fee used to fund alternative dispute resolution was upheld as constitutional.  In 
Wenger v. Finley
, 185 Ill. App. 3d 907 (1989), the
 plaintiff class filed suit challenging, under the free access clause, the imposition of a $1 fee added to the filing fee for civil cases to fund dispute resolution centers.  The Illinois Not-for-Profit Dispute Resolution Center Act (Ill. Rev. Stat. 1987, ch. 37, pars. 851 through 856) provided that, in judicial circuits where a dispute resolution fund was established, the clerks of the circuit court shall collect a $1 fee for the dispute resolution fund to be paid by all parties filing civil cases.  Ill. Rev. Stat. 1987, ch. 37, par. 853(c).  The chief judge of each circuit administered the fund and was charged with making yearly disbursements to qualified dispute resolution centers within the circuit.  Ill. Rev. Stat. 1987, ch. 37, par. 854(a).  The dispute resolution centers were not court-annexed.  The issue before the court was whether the dispute resolution centers were sufficiently related to the maintenance and operation of the court system.

The plaintiff class argued that
 the dispute resolution centers were not part of the judicial system and that the types of disputes that a dispute resolution center would hear were not typically justiciable in the court system.  The plaintiffs likened the scheme to that at issue in 
Crocker
, where the court had held that the domestic violence shelter program was not sufficiently court-

related to justify the imposition of the surcharge.  The defendants responded that the dispute resolution centers would reduce the number of cases pending in the courts, thus reducing the amount of time required to reach a resolution for both dispute resolution center cases and cases that remained in the court system.  
Wenger
, 185 Ill. App. 3d at 914.

The 
Wenger
 court deferred to the legislature, which had specifically found that there was a compelling need for the dispute resolution centers and that the centers could make a substantial contribution to the operation and maintenance of the courts  (Ill. Rev. Stat. 1987, ch. 37, par. 851).  The court held that the fee was imposed for a court-related purpose and that there was a reasonable, nonarbitrary relationship between the purpose of the fee, improving the administration of the courts, and the means adopted to achieve that purpose, imposing a $1 fee on parties initiating litigation.  
Wenger
, 185 Ill. App. 3d at 916.

In this case, we similarly defer to the legislature's judgment in determining that the System may operate to expedite cases within the court system.  We accept this unrebutted rationale for the fee.  We hold that, because the System functions as part of a unified court system, the legislature may impose a fee on any, or all, litigants in the circuit courts to fund the System.

V.    CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and COLWELL, JJ., concur.