YOLANDA ZAMARRON *et al.*, Indiv. and on Behalf of All Persons Similarly Situated, Plaintiffs-Appellants, v. AURELIA PUCINSKI, Clerk of the Circuit Court of Cook County, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—94—1685

Opinion filed June 28, 1996.

Lionel I. Brazen, of Chicago and Paul R. Jenen, of Wheeling, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Patricia M. Shymanski, Patricia M. Moser, and Harry John Devereux, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE THEIS delivered the opinion of the court:

The plaintiffs filed this class action for declaratory and injunctive relief, as well as an accounting and a refund of fees paid, against the clerk of the circuit court of Cook County, Aurelia Pucinski, and the

Cook County treasurer, Edward J. Rosewell. In their second amended complaint, the plaintiffs alleged that the General Assembly enacted sections 27.2 and 27.3a of "An Act to revise the law in relation to clerks of courts" (the Act) (Ill. Rev. Stat. 1989, ch. 25, pars. 27.2, 27.3a), effective January 1, 1989, pursuant to Public Act 85—1252, in order to abate general property taxes and for other nonjudicial purposes in violation of the free access clause of the state constitution (Ill. Const. 1970, art. I, § 12) and the due process clauses of the state and federal constitutions. Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV. Section 27.2, as amended by Public Act 85—1252, increased court filing fees, and section 27.3a imposed a surcharge for court automation. At the conclusion of the plaintiffs' case in chief, the circuit court entered a directed finding in favor of the defendants on the grounds that the plaintiffs failed to present a *prima facie* case. On appeal, the plaintiffs raise the following issues: (1) whether the circuit court erred when it entered a directed finding in the defendants' favor, (2) whether the court committed reversible error when it refused to admit a certified copy of the legislative debates into evidence, and (3) whether the court abused its discretion when it refused to compel the defendants to produce documents requested under Supreme Court Rule 237(b) (134 Ill. 2d R. 237(b)).

We conclude that the circuit court properly granted a directed finding for the defendants because the plaintiffs failed to establish a *prima facie* case that sections 27.2 and 27.3a are constitutionally infirm. We further hold that although the court should have considered the legislative debates regarding Public Act 85—1252, its refusal to admit the debates into evidence does not constitute reversible error. Finally, the court did not abuse its discretion when it declined to compel production of certain records sought by the plaintiffs. We affirm.

The court below defined and certified the plaintiffs' class as follows:

> "All persons, corporations, partnerships, proprietorships, municipalities (other than fees incurred in the filing of cases in its capacity as a law enforcement agency as defined by Ill. Rev. Stats. Ch. 25, § 27.2 [17]) and other legal entities which, between January 1, 1989 and December 31, 1991, were caused to pay court fees to the Clerk of the Circuit Court of Cook County pursuant to Ill. Rev. Stats. Chapter 25, § 27.2(1), (1)(c), (3) and (5), and pursuant to § 27.3a, amended August 30, 1988, effective January 1, 1989."

At trial, the plaintiffs maintained that Public Act 85—1252 is unconstitutional because (1) the increased fees obtained from civil litigants are used to finance both the criminal and quasi-criminal

courts, (2) the legislature enacted Public Act 85—1252 in order to raise general revenue for the county and not to fortify the court system, and (3) the General Assembly failed to conduct a cost study prior to enacting Public Act 85—1252.

The testimony of the plaintiffs' witnesses revealed that the filing fees paid to the clerk of the circuit court are transmitted to the comptroller's office and then deposited with the Cook County treasurer. Ultimately, the funds are placed in the general Cook County corporate fund.

Thomas Beck, a former comptroller for Cook County, testified that the filing fees that are transmitted to the treasurer are not earmarked for use by the clerk's office alone. He also testified that he estimated that Public Act 85—1252 would generate $17.5 million in revenue during 1989.

John Goggin, associate clerk in charge of court operations, also testified. He stated that he participated in the preparation of the annual fiscal budget for the circuit court. He explained that the clerk's total operating budget does not fairly reflect the actual cost of maintaining the clerk's office. Goggin explained that the county absorbs many costs associated with the operation and maintenance of the courts such as rent, storage of court files, heating, air conditioning and electricity. He testified that the county pays $15 million a year in rent for the Daley Center alone. Goggin further stated that one would have to examine several other budgets such as that of the public defender, the public guardian and the office of the chief judge in order to arrive at an accurate figure reflecting the cost of operating and maintaining the court system.

Kevin Cuttone, a former assistant budget director, corroborated much of Goggin's testimony. Cuttone estimated that $7.6 million would be generated from the fees collected for the court automation fund.

During the trial, the parties stipulated to all figures contained in the "Comptroller's Report of Cook County" (Comptroller's Report) for the fiscal year of 1987, including the budgetary figures for the clerk's office. The court admitted the Comptroller's Report into evidence as exhibit 3. The parties also stipulated to the relevant portions of the annual appropriations bill (Bill) for Cook County for the fiscal year of 1988. The trial court admitted the Bill into evidence as exhibit 8.

Several deputy clerks from the suburban municipal districts also testified on the plaintiffs' behalf. Their testimony showed that the majority of courtrooms located in the third, fourth and sixth municipal districts are designated for criminal cases.

At the close of the plaintiffs' case, the defendants moved for a

directed finding pursuant to section 2—1110 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—1110 (West 1992). The trial court granted the defendants' motion. The court made its initial ruling orally at the close of trial on April 20, 1994. The court entered a written order dated April 21, 1994. The plaintiffs now appeal.

■ As a preliminary matter, we must ascertain the proper standard of review. The plaintiffs appeal from the trial court's written order which expressly states that the plaintiffs "failed to present a prima facie case of relief under Counts I and II." Where a trial court determines that the plaintiff has failed to establish a *prima facie* case as a matter of law, then the reviewing court must consider the trial court's decision under a *de novo* standard of review. *Evans v. Gurnee Inns, Inc.*, 268 Ill. App. 3d 1098, 645 N.E.2d 556 (1994).

The plaintiffs' first contention on appeal is that they succeeded in establishing a *prima facie* case that sections 27.2 and 27.3a, as amended by Public Act 85—1252, are unconstitutional. Ill. Rev. Stat. 1989, ch. 25, pars. 27.2, 27.3a. They argue that the clerk of the circuit court and the Cook County treasurer are required by the state and federal constitutions to collect only reasonable fees which are necessary to finance the maintenance and operation of the courts.

We begin our analysis of the plaintiffs' argument by reviewing the constitutional provisions at issue. The plaintiffs claim that sections 27.2 and 27.3a violate the due process clause of the federal and state constitutions, as well as the free access clause of the state constitution. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §§ 2, 12.

■ Due process requires that the legislation bear a reasonable relationship to a public interest and that the means adopted are a reasonable method of accomplishing that objective. *Crocker v. Finley*, 99 Ill. 2d 444, 456, 459 N.E.2d 1346, 1352 (1984). The free access clause of the Illinois Constitution qualifies the due process standard by imposing the further requirement that court filing fees relate to the operation and maintenance of the court system. *Crocker*, 99 Ill. 2d 444, 459 N.E.2d 1346; *Pick v. Pucinski*, 247 Ill. App. 3d 1068, 618 N.E.2d 657 (1993). The free access clause protects litigants from unreasonable fees that interfere with their right to a remedy in the law or that impede the administration of justice. *Lee v. Pucinski*, 267 Ill. App. 3d 489, 642 N.E.2d 769 (1994). Thus, if legislation pertaining to court fees survives constitutional scrutiny under the free access clause of the Illinois Constitution, the broader concept of due process is necessarily satisfied.

■ We further note that when faced with a challenge to the validity of a statute, there is a strong presumption that the statute is constitutional. The plaintiffs bear the burden of clearly establishing

the alleged constitutional violation. *Wenger v. Finley*, 185 Ill. App. 3d 907, 541 N.E.2d 1220 (1989). If the reasonableness of given legislation is "fairly debatable," then courts will defer to the decision of the General Assembly. *Wenger*, 185 Ill. App. 3d at 916, 541 N.E.2d at 1225. Moreover, " '[t]he constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from the imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law or impede the due administration of justice ***.' " *Ali v. Danaher*, 47 Ill. 2d 231, 236, 265 N.E.2d 103, 106 (1970), quoting *Williams v. Gottschalk*, 231 Ill. 175, 179, 83 N.E. 141, 142 (1907).

■ The plaintiffs acknowledge that no judicial precedent exists for the proposition that funds obtained via the civil justice system may not be used to finance expenses generated by the criminal justice system. However, they urge us to reach this conclusion by extrapolating from the court's holding and analysis in *Crocker*.

In *Crocker*, our supreme court struck down a $5 filing fee used to fund a domestic violence shelter program. The court found that using court fees to fund a general public welfare program violated the free access clause of the Illinois Constitution and the due process clauses of the state and federal constitutions by imposing an unreasonable burden on litigants. The court concluded that court filing fees may be imposed "for purposes relating to the operation and maintenance of the courts." *Crocker*, 99 Ill. 2d at 454, 459 N.E.2d at 1351. Thus, the precise issue before us is whether the plaintiffs established a *prima facie* case that the increased filing fees and the court automation surcharge are sufficiently related to the maintenance and operation of the court system so as to withstand constitutional scrutiny.

We note that the court in *Crocker* did not advocate a distinction between the various divisions of our court system when evaluating the constitutionality of a court fee provision. The court discussed the parameters of the free access clause in terms of the fees used for the court system at large. Thus, the court's holding and analysis in *Crocker* do not support the plaintiffs' argument that funds obtained via the civil justice system may not be used to pay for expenses generated by the court system as a whole. The court in *Crocker* found that the $5 fee was too remote from any court-related purpose to withstand constitutional analysis. In the present case, however, the plaintiffs actually concede that the fees collected are arguably court related. As such, we find that the situation presented here is more analogous to the statutory scheme before the court in *Ali v. Danaher*, 47 Ill. 2d 231, 265 N.E.2d 103 (1970).

In *Ali*, the court upheld a $1 fee imposed on every litigant for the

maintenance and operation of the county law library as constitutional. The court determined that it was not significant that all persons paying the library fee might not actually use the library facilities in the particular ligation. The court relied on the fact that the library remained available to the litigants if needed. The court found that the presence of such facilities is conducive to the administration of justice and may have constituted an improvement. *Ali*, 47 Ill. 2d at 237, 265 N.E.2d at 106.

Likewise, in the present case, the existence and proper functioning of the criminal courts benefit the overall administration of justice. Even assuming that criminal cases generate more costs than civil cases, the plaintiffs have failed to offer statutory, constitutional or precedential authority which supports a finding that the scheme of funding the court system is unconstitutional. Notably, the concept of a unified court system embodied by our state constitution further weakens the plaintiffs' fragmented view of our system of justice. Our constitution provides that "[c]ircuit [c]ourts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction." Ill. Const. 1970, art. VI, § 9. This article was intended to create a single integrated trial court structure and thereby cloak the circuit courts with jurisdiction to adjudicate all controversies. *In re Marriage of Isaacs*, 260 Ill. App. 3d 423, 632 N.E.2d 228 (1994); *Hoover v. May Department Stores Co.*, 62 Ill. App. 3d 106, 117, 378 N.E.2d 762, 772 (1978), *rev'd on other grounds*, 77 Ill. 2d 93, 395 N.E.2d 541 (1979). Our constitution, taken with the pronouncements of our supreme court in *Crocker*, leads us to the conclusion that the plaintiffs have failed to establish that a constitutional violation occurs when funds collected through the civil justice system are used to finance the court system as a whole.

The plaintiffs also argue that they were capable of proving a *prima facie* case that sections 27.2 and 27.3a violate the state and federal constitutions because the funds collected are being used to abate general property taxes and not to fortify the court system as a whole. As an initial matter, the plaintiffs maintain that the legislative debates pertaining to the enactment of Public Act 85—1252 support this contention. At trial, the court refused to admit certified copies of the debates into evidence over the plaintiffs' objection. On appeal, they challenge the propriety of this ruling.

■ We agree with the plaintiffs that the debates were admissible as evidence insofar as they are public records. We have reviewed the debates at issue. Statements made by members of the General Assembly in legislative debate are useful only when examined in the context of the debate in its entirety. *Morel v. Coronet Insurance Co.*,

117 Ill. 2d 18, 509 N.E.2d 996 (1987). We conclude that the debates at issue, taken with the evidence actually presented, would not have been sufficient to establish a *prima facie* case that sections 27.2 and 27.3a are unconstitutional.

The plaintiffs further maintain that even without the benefit of the debates, exhibits 3 and 8, the 1987 Comptroller's Report and the 1988 appropriations bill, are sufficient to show that they established a *prima facie* case below. Under the plaintiffs' interpretation of the exhibits, the figures contained in the 1987 Comptroller's Report, combined with Beck's testimony that Public Act 85—1252 would raise an additional $17.5 million, show that the clerk's office would have an excess of revenue over expenditures after the Act took effect in 1989. The plaintiffs also contend that they established damages by showing that they paid fees pursuant to the legislation.

■ We have reviewed the record, including exhibits 3 and 8. There is no testimony that the fees raised from 1989 to 1991 created excess funds. The evidence presented at trial related only to court costs prior to the enactment of the legislation in question. The plaintiffs never have presented evidence explaining why pre-1989 figures are relevant, nor do they offer proof of a reason for their failure to obtain budget figures after the enactment of the legislation at issue.

The plaintiffs failed to put forth evidence to show that fees obtained from civil litigants were used for purposes that were unrelated to the operation and maintenance of the court system at large. We also note that the plaintiffs failed to offer any testimony from a class representative to establish that they in fact paid fees under the statutes in question and, therefore, arguably were harmed.

Further, John Goggin testified that the county absorbs many costs associated with the operation and maintenance of the courts. Moreover, Goggin indicated that a more detailed analysis of several different offices and departments would be necessary in order to determine the total costs for operating and maintaining the court system.

With respect to the court automation surcharge imposed pursuant to section 27.3a, the plaintiffs' evidence actually supports a finding that the charge is constitutional. The statute provides, in part:

> "[T]he county board may require the clerk of the circuit court in their county to charge and collect a court automation fee of not less than $1 nor more than $3 to be charged and collected by the clerk of the court. Such fee shall be paid at the time of filing the first pleading, paper or other appearance filed by each party in all civil cases or by the defendant in any felony, traffic, misdemeanor, municipal ordinance, or conservation case, provided that the rec-

ord keeping system which processes the case category for which the fee is charged is automated or has been approved for automation by the county board ***." Ill. Rev. Stat. 1989, ch. 25, par. 27.3a.

John Goggin testified that after the clerk collects the fee imposed by section 27.3a, the money is deposited into a designated account. The funds contained in the account are subject to payout on the agreement of the chief judge of the circuit court and the clerk. Goggin further testified that the funds collected are used for the support and enhancement of the court's computer system. He explained that the court computer system is being upgraded continuously. Given Goggin's testimony, as well as the absence of evidence that the funds obtained from the court automation surcharge are being used for non-court-related purposes, we reject the plaintiffs' contention that they established a *prima facie* case that section 27.3a is unconstitutional.

■ The plaintiffs also have argued that sections 27.2 and 27.3a are deficient because the county did not conduct a cost study or submit one to the General Assembly prior to the enactment of Public Act 85—1252. We know of no rule of law which requires governing bodies to determine precisely the cost of various government services prior to enacting legislation. Accord *Lee v. Pucinski*, 267 Ill. App. 3d 489, 642 N.E.2d 769 (1994); *Pick v. Pucinski*, 247 Ill. App. 3d 1068, 618 N.E.2d 657 (1993).

The plaintiffs' final contention on appeal is that the trial court abused its discretion in refusing to compel the production of certain documents requested pursuant to Supreme Court Rule 237(b). 134 Ill. 2d R. 237(b). The notice to produce requested that David Peterson and Patrick Botterman produce various records. Peterson did not produce any of the requested records, explaining that no one had asked him to do so. Botterman, the acting chief deputy clerk of the second municipal district, did not produce any of the records requested. He informed the court that the records were probably in a storage facility and that Richard Urbanski was in charge of the facility.

■ The plaintiffs did not move to compel Peterson to produce the records below, and they cannot do so for the first time on appeal. *Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1083, 631 N.E.2d 1246, 1257 (1994). We reject the plaintiffs' argument that the trial court, *sua sponte*, should have demanded that Peterson produce the records sought under Rule 237(b).

The trial court denied the plaintiffs' motion to compel Botterman to produce records, finding that the plaintiffs should notify another

individual to produce the documents. We note that the remedy for noncompliance with Rule 237(b) is within the sound discretion of the trial court. *Cohn v. Northern Trust Co.*, 250 Ill. App. 3d 222, 621 N.E.2d 132 (1993). "Rule 237 notices are not discovery tools and should not be used as a substitute for the discovery rules." *Lannert v. Ramirez*, 214 Ill. App. 3d 1102, 1105, 574 N.E.2d 238, 240 (1991). The plaintiffs filed an incomplete request to produce in 1993 and waited until three weeks before trial to amend their notice to request the documents at issue. The plaintiffs made no attempt to continue the trial. Thus, we find that, under the facts of this case, the plaintiffs have failed to show that the trial court abused its discretion by refusing the plaintiffs' motion to compel Botterman to produce the records at issue.

For the reasons stated above, we affirm the trial court's April 21, 1994, order finding that the plaintiffs failed to establish a *prima facie* case and entering a directed finding in favor of the defendants.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.