FOURTH DIVISION

MARCH 22, 2001

1-99-1987

KEVIN ROSE, LATAUNIA GREEN, ) Appeal from the

RONALD BASIK and RICHARD WATERSON, ) Circuit Court of

individually and in a representative ) Cook County.

capacity on behalf of all others )

similarly situated, )

)

Plaintiffs-Appellants, ) 

) 

v. )

)

AURELIA PUCINSKI, Clerk of the Circuit )

Court of Cook County, and )

JUDY BAAR TOPINKA, Treasurer of )

State of Illinois, ) Honorable

) Ronald C. Riley,

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This appeal challenges the constitutionality of funding the mandatory arbitration program under the Code of Civil Procedure (Code) section 2-1009A (735 ILCS 5/2-1009A (West 1998) (section 2-1009A)) in Cook County, which exacts a $10 charge on all circuit court civil filings of cases.  The charge is imposed even for causes that are statutorily and by rule precluded from using the arbitration system funded by the fee.  Plaintiffs are litigants who were compelled to pay the fee when they filed their lawsuits for various causes of action, but did not qualify as users of the arbitration system.  Defendants are the clerk of the circuit court of Cook County, who charges for and collects court fees, and the treasurer of the state of Illinois, who administers the court fees collected by the clerk.  The circuit court granted defendants' Code section 2-615 (735 ILCS 5/2-615 (West 1998) (section 2-615)) motion for dismissal and denied plaintiffs' motion for summary judgment.   735 ILCS 5/2-1005 (West 1998).  Plaintiff appeals. 

The legal issue presented is whether the imposition of a fee upon a class of litigants who are specifically excluded from receiving the benefit of the program funded with the fee violates various provisions of the Illinois Constitution.

Section 5/2-1001A of the Code (735 ILCS 5/2-1001A (West 1998) (section 2-1001A)), authorizes the creation of a court-annexed mandatory arbitration system in Illinois, as follows:

"The Supreme Court of Illinois, by rule, may provide for mandatory arbitration of such civil actions as the Court deems appropriate in order to expedite in a less costly manner any litigation wherein a party asserts a claim not exceeding $50,000 or any lesser amount as authorized by the Supreme Court for a particular Circuit, or a judge of the circuit court, at a pretrial conference determines that no greater amount than that authorized for the Circuit appears to be genuinely in controversy."   

Illinois Supreme Court Rule 86(b) (155 Ill. 2d R. 86(b)), declares that civil actions are subject to mandatory arbitration "if each claim therein is exclusively for money in an amount or of a value not in excess of the monetary limit authorized by the Supreme Court for that circuit or county within that circuit, exclusive of interest and costs."  

To fund the mandatory arbitration program, the Legislature enacted section 2-1009A, which provides:

"Filing fees.  In each county authorized by the Supreme Court to utilize mandatory arbitration, the clerk of the circuit court shall charge and collect, in addition to any other fees, an arbitration fee of $8, except in counties with 3,000,000 or more inhabitants the fee shall be $10, at the time of filing the first pleading, paper or other appearance filed by each party in all civil cases, but no additional fee shall be required if more than one party is represented in a single pleading, paper or other appearance.  Arbitration fees received by the clerk of the circuit court pursuant to this Section shall be remitted within one month after receipt to the State Treasurer for deposit into the Mandatory Arbitration Fund, a special fund in the State treasury for the purpose of funding mandatory arbitration programs and such other alternative dispute resolution programs as may be authorized by the circuit court rule for operation in counties that have implemented mandatory arbitration, with a separate account being maintained for each county."  735 ILCS 5/2-1009A (West 1998).  

According to statute and rule, then, although only those actions involving exclusive claims for money not in excess of $50,000 are arbitrable, the mandatory arbitration program authorizes collection of a filing fee from each litigant in all civil cases which utilize the system, regardless of whether a particular case is arbitrable, or not. 

On September 15, 1998, plaintiffs filed a class-action complaint in the circuit court, in which they asserted that they were required to pay the mandatory arbitration fee in filing complaints for specific performance, probate and dissolution of marriage despite the fact that none of those matters were eligible for arbitration proceedings.  Plaintiffs additionally alleged that the clerk of the circuit court collects the mandatory arbitration fee in other actions filed in the circuit court, such as adoption matters, tax cases and foreclosure proceedings, which also are not eligible for arbitration.  Further, plaintiffs contended that the clerk of the circuit court does not permit new actions to be filed if the arbitration fee is not paid and refuses requests to waive payment of the fee.  Plaintiffs alleged that section 2-1009A violates the Illinois Constitution, specifically, the due process, free access, uniformity and equal protection clauses.    

Defendants moved to dismiss the action under section 2-615 for failure to state a cause of action, asserting that the mandatory arbitration fee was constitutional because its burden fell equally on all civil law litigants in Cook County and was related to the overall operation and maintenance of the court system in Illinois.

On January 6, 1999, plaintiffs moved for summary judgment, relying upon the facts alleged in their complaint, and added an argument not pled, namely, that the mandatory arbitration fee violated the free access clause of the Illinois Constitution.   

The circuit court granted defendants' motion to dismiss, denied plaintiffs' motion for summary judgment, and denied as moot plaintiffs' motion to certify the class, in light of the court's ruling on the merits.  Plaintiffs timely filed their notice of appeal.

We note, preliminarily, that although the denial of a motion for summary judgment is not ordinarily appealable, such a denial is reviewable where the case is on appeal before the appellate court from a final judgment, such as a motion to dismiss which has been granted, as in the present case, where there has been no evidentiary hearing or trial, and the party seeking such review has not in any way prevented or avoided hearing or trial.  See 
Arangold Corp. v. Zehnder
, 187 Ill. 2d 345, 357, 718 N.E.2d 191 (1999);  
International Association of Machinists and Aerospace Workers, District Lodge No. 140 v. Chesire/A Xerox Co.
, 125 Ill. App. 3d 350, 352, 465 N.E.2d 981 (1984); 
Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Co.
, 317 Ill. App. 3d 67, 72-73, 739 N.E.2d 85 (2000); 
DePluzer v. Village of Winnetka
, 265 Ill. App. 3d 1061, 1064-65, 638 N.E.2d 1157 (1994).

A circuit court's decision with respect to the constitutionality of a statute is reviewed 
de novo
.  
Brown's Furniture, Inc. v. Wagner
, 171 Ill. 2d 410, 420, 665 N.E.2d 795 (1996).  A strong presumption of constitutionality attaches to legislative enactments.  
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 377, 689 N.E.2d 1057 (1997).  The party who challenges a statute's constitutionality bears the heavy burden of clearly establishing the violation alleged.  
People v. Jeffries
, 164 Ill. 2d 104, 111, 646 N.E.2d 587 (1995). 

I

Plaintiffs initially contend that constitutional due process is contravened where a fee or litigation tax is imposed upon parties who are excluded from its benefits, citing 
Crocker v. Finley
, 99 Ill. 2d 444, 459 N.E.2d 1346 (1984) (
Crocker
).  

In 
Crocker
, the Illinois Supreme Court struck down legislation authorizing a $5 circuit court filing fee to fund a domestic violence program.  
The supreme court found the $5 charge violated the Illinois Constitution's due process and equal protection clauses because there was no rational relationship between imposition of the fee and litigants which would support funding of a general welfare program.  Plaintiffs correctly assert that the litigation tax in 
Crocker
 fell on a narrow class of persons who were forced to bear the cost of a program provided to members of the public generally, although the purpose of the tax was unrelated to the litigation.  Plaintiffs point out that the present case is the obverse of 
Crocker
 because it involves funding for a litigation-related benefit that is available only to a limited number of litigants depending on the nature of their cases.  

Significantly, 
the supreme court also made clear in 
Crocker
 that court filing fees and litigation taxes properly may be imposed for purposes "relating to the operation and maintenance of the courts."  99 Ill. 2d at 454.  In explaining the provision securing the right to collect court filing fees, the court noted:

"'The constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from the imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law or impede the due administration of justice; ***.'"  
Ali v. Danaher
, 47 Ill. 2d 231, 236, 265 N.E.2d 103 (1970) (
Ali
), quoting 
Williams v. Gottschalk
, 231 Ill. 175, 179, 83 N.E. 141 (1907) and 
Adams v. Corriston
, 7 Minn. 456, 461 (1862).

The $5 
Crocker
 fee was too remote from any court-related purpose to withstand constitutional analysis.  The case
 
sub judice
 clearly is distinguishable from 
Crocker
 because the mandatory arbitration fee does not exist to fund a general welfare program; rather, it is purportedly integrally related to the operation and maintenance of the court system in general.

In 
Ali
, cited in the foregoing paragraph and quote, the supreme court upheld a $1 fee imposed on every litigant for the maintenance and operation of the county law library as constitutional (47 Ill. 2d at 237), finding insignificant the fact that all persons paying the library fee might not actually use the library facilities in the particular litigation.  The court emphasized the fact that the library remained available to litigants if needed and found that the presence of such facilities is conducive to the administration of justice and may have constituted an improvement.  
Ali
, 47 Ill. 2d at 237.  

Similarly, in 
Zamarron v. Pucinski
, 282 Ill. App. 3d 354, 668 N.E.2d 186 (1996) (
Zamarron
), the appellate court upheld an automation fee surcharge as constitutional although fees collected in the civil justice system were used to finance the criminal justice system.  The court reasoned that the proper functioning of the criminal courts benefits the overall administration of justice.  
Zamarron
, 282 Ill. App. 3d at 360.  In its analysis of the constitutional challenge there, the court stated:

"Notably, the concept of a unified court system embodied by our state constitution further weakens the plaintiffs' fragmented view of our system of justice.  Our constitution provides that '[c]ircuit [c]ourts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction ***.' [citation]  [Article VI, §9 of the Illinois Constitution] was intended to create a single integrated trial court structure, and thereby cloak all the circuit courts with jurisdiction to adjudicate all controversies." 
Zamarron
, 282 Ill. App. 3d at 360.  See also 
In re Marriage of Isaacs
, 260 Ill. App. 3d 423, 632 N.E.2d 228 (1994); 
Hoover v. May Department Stores, Co.
, 62 Ill. App. 3d 106, 378 N.E.2d 762 (1978), 
rev'd on other grounds
, 77 Ill. 2d 93, 395 N.E.2d 541 (1979).

Likewise, in the instant case, the creation of a mandatory arbitration system benefits the overall administration of justice by easing the backlog of cases in the circuit courts.  In debating the usefulness of a mandatory arbitration system for Public Act  84-844, one legislator stated that "[t]his [mandatory arbitration] system *** could significantly limit the amount of time that it would take to have a final disposal [sic] *** of cases."  84th Ill. Gen. Assem., House Proceedings, May 24, 1985, at 127-28 (statements of Representative Breslin).  Further, instituting a mandatory arbitration system would "give our [s]upreme [c]ourt the authority to move ahead[,] move these cases along, and bring justice to all the citizens of the State of Illinois at less expense."  84th Ill. Gen. Assem., House Proceedings, May 24, 1985, at 130 (statements of Representative Countryman).  

Despite the intended purpose of the General Assembly to benefit Illinois' overall administration of justice by instituting the mandatory arbitration program, plaintiffs here argue that they are prohibited by the challenged legislation from participating in the arbitration program.  In 
Zamarron
, however, the court upheld the automation fee, which was used solely for the criminal court, notwithstanding the fact that the program was funded by civil litigants who would not see direct benefits of the fee unless they would participate one day in a criminal trial.  Although plaintiff in 
Zamarron
 litigated in the civil system, the use of an automated system in the criminal system feasibly could benefit that plaintiff in future criminal litigation.  

Both 
Zamarron
 and 
Crocker
 stand for the proposition that within the parameters of the Illinois Constitution, funds obtained via the civil justice system may be used to pay for expenses incurred by the court system as a whole.  282 Ill. App. 3d at 359; 99 Ill. 2d at 454. 

II

Plaintiffs next invoke the free access clause as a basis for finding section 2-1009A constitutionally infirm. The free access clause provides, "every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation.  He shall obtain justice by law, freely, completely, and promptly" (Ill. Const. 1970, art. I, §12). 

The free access clause qualifies the due process standard by imposing the further requirement that court filing fees relate to the operation and maintenance of the system.  
Zamarron
, 282 Ill. App. 3d at 358.  The free access clause protects litigants from the imposition of unreasonable fees that interfere with their right to a remedy in the law or impede with the due administration of justice.  
Lee v. Pucinski
, 267 Ill. App. 3d 489, 494-95, 642 N.E.2d 769 (1994) (
Lee
).  Therefore, if legislation pertaining to court fees survives constitutional scrutiny under the free access clause of the Illinois Constitution, the broader concept of due process is necessarily satisfied.  
Zamarron
, 282 Ill. App. 3d at 358.  In 
Lee
, the appellate court held that statutory fees charged by clerks of the court for reproduction of court documents did not violate the free access clause or due process clause of the Illinois Constitution because they were imposed only for purposes relating to the service provided, not for the purpose of raising general revenue.  
Lee
, 267 Ill. App. 3d at 495.  

In the instant case, the mandatory arbitration fees satisfy the requirements of the free access clause because the fee serves solely to improve the overall administration of the court system.  Plaintiffs' advocation, that only those categories of litigants who qualify for mandatory arbitration should be responsible for paying the fee, would create a fragmented rather than unified court system, since every fee charged would have to be allocated to fit the litigant's purpose for filing a cause of action.  The mandatory arbitration fee imposed here serves to improve overall the administration of justice and was imposed for a court-related purpose.  Accordingly, the mandatory arbitration fee complies with the free access clause of the Illinois Constitution.

Plaintiffs receive the benefit of an improved court system through the use of mandatory arbitration for, although plaintiffs in their various categories of cases are precluded from utilizing the arbitration system, that system ineluctably benefits the overall court system by freeing the litigation calendars, courtrooms, judges and ancillary personnel that otherwise would be engaged in such arbitrable cases to attend to matters which well may include cases in plaintiffs' categories.
(footnote: 1)  Plaintiffs cite no evidence or case law to support the argument that receiving an overall benefit of an improved court system through the use of a mandatory arbitration program is not a direct benefit.

It should be noted that the principles set forth in 
Crocker
 and 
Zamarron
 are not unique.  Courts have held that "[a]ll other statutory fees designated for support of the clerk's office or the court system have been found to be constitutional."  
Mann v. Pucinski
, No. 98 C 8004 (N.D. Ill. March 3, 1999) (Memorandum Opinion and Order); see also 
Pick v. Pucinski
, 247 Ill. App. 3d 1068, 618 N.E.2d 657 (1993) (fee for refiling after remand from the appellate court was related to the operation and maintenance of courts); 
Fried v. Danaher
, 46 Ill. 2d 475, 263 N.E.2d 820 (1970) (payment of jury fee even though case ends without use of a jury is constitutional); 
Wenger v. Finley
, 185 Ill. App. 3d 907, 541 N.E.2d 1220 (1989) (fee to support a dispute resolution center, imposed on all suits filed in the circuit court, sufficiently related to maintenance and operation of court system).  
In 
Mellon v. Coffelt
, 313 Ill. App. 3d 619, 730 N.E.2d 102 (2000), the Second District Appellate Court upheld the constitutionality of section 2-1009A as applied in Lake County, against the argument that because arbitration was unavailable to parties filing actions that were not exclusively for money damages, the 
statute was unconstitutional.

III

Plaintiffs next challenge the subject legislation as violative of the uniformity and equal protection clauses of the Illinois Constitution.  Ill. Const. 1970, art. I, §2, art. IX, §2.  "'The power of the Legislature in Illinois to make classifications, particularly in the field of taxation, is very broad, and the fourteenth amendment of the Federal Constitution imposes no "iron rule" of equal taxation.'"  
Ali
, 47 Ill. 2d at 238, quoting 
Thorpe v. Mahin
, 43 Ill. 2d 36, 45-46, 250 N.E.2d 633 (1969).  The uniformity clause provides:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly.  Exemptions, deductions, credits, refunds and other allowances shall be reasonable."  Ill. Const. 1970, art. I, §2, art. IX, §2.

To survive scrutiny under the uniformity clause, a nonproperty tax classification must be based on a real and substantial difference between the people taxed and those not taxed, and the classification must bear some reasonable relationship to the object of the legislation or to public policy.  
Searle Pharmaceuticals, Inc. v. Department of Revenue
, 117 Ill. 2d 454, 468, 512 N.E.2d 1240 (1987).  

The uniformity clause imposes more stringent limitations than the equal protection clause on the Legislature's authority to classify the subjects and objects of taxation.  
Geja's Café v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 247, 606 N.E.2d 1212 (1992) (
Geja's Café
).  The uniformity requirement, as traditionally understood, may be violated by classifications which are either "underinclusive" or "overinclusive."  
Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority
, 172 Ill. 2d 243, 250, 665 N.E.2d 1246 (1996).  Although the uniformity clause imposes a more stringent standard than the equal protection clause, the scope of a court's inquiry remains relatively narrow.  
Geja's Café
, 153 Ill. 2d at 248.  A party challenging a nonproperty tax classification has the burden of showing that it is arbitrary or unreasonable and, if facts can reasonably sustain the classification, it must be upheld.  
Geja's Café
, 153 Ill. 2d at 248.

Plaintiffs assert that the fee imposed by section 2-1009A is arbitrary and unreasonable because it requires litigants to pay for a service that by law they cannot invoke; however, "not all persons burdened by a tax must be benefitted the same way."  
Forsberg v. City of Chicago
, 151 Ill. App. 3d 354, 365, 502 N.E.2d 283 (1986) (
Forsberg
).  In 
Forsberg
, the appellate court held that a mooring tax imposed by city ordinance was constitutional and was not an attempt by the city to levy an extraterritorial tax because it was assessed against boat owners or users who were not necessarily residents of Chicago.  The court held that, notwithstanding the fact that the tax was imposed upon boat owners who did not reside in the city and did not receive services from the city, the persons burdened by the mooring tax did not have to be benefitted in the same manner.

The same analysis applied in 
Forsberg
 may be applied here.  The mandatory arbitration fee is imposed upon all civil litigants who use the civil court system and its facilities for the purpose of administering justice with respect to limited monetary damage claims in a timely, efficient, and cost-effective manner.  See 735 ILCS 5/2-1001A (West 1998).  Similar to plaintiffs in 
Forsberg
, plaintiffs in this case who are burdened by the mandatory arbitration fee need not be benefitted necessarily by qualifying for arbitration in each category of case.  Plaintiffs did not meet their burden of showing that the mandatory arbitration fee is arbitrary or unreasonable, having failed to submit any evidence to illustrate that mandating all civil litigants to pay the fee was an overinclusive or underinclusive classification.  The subject classification was based upon real and substantial differences between persons subject to a fee and those who were not taxed because only civil litigants intending to utilize the court system were subject to paying the fee, and the classification bore some reasonable relationship to the object of the legislation which, in this case, was to improve the overall administration of justice through an arbitration program.  

The section 2-1009A court filing fee is constitutional, having been imposed only for purposes relating to the operation and maintenance of the courts.  
Crocker
, 99 Ill. 2d at 454.  Accordingly, the mandatory arbitration fee does not violate the uniformity or equal protection clauses of the Illinois Constitution.

IV

Finally, plaintiffs assert that strict scrutiny should be applied to the statutory fee provision as is imposed on cases which determine fundamental personal interests.  In the present case, plaintiff Waterson brought suit based on the fee he paid upon entering his appearance in a dissolution of marriage matter.  Under 
People v. R.G.
, 131 Ill. 2d 328, 343, 546 N.E.2d 533 (1989), an individual's freedom of choice concerning marriage and family life is a fundamental right.  The issue here is whether the court's strict scrutiny is triggered when a burden is imposed on a fundamental interest with which the imposition of the mandatory arbitration fee allegedly interferes because plaintiff is unable to obtain a divorce except through the court.  The Illinois Supreme Court has held the imposition of the special tax upon the issuance of a marriage license imposes a direct impediment to the exercise of the fundamental right to marry and must be subjected to the heightened test of strict scrutiny and not to the lesser rational relationship test.  
Boynton v. Kusper
, 112 Ill. 2d 356, 369, 494 N.E.2d 135 (1986) (
Boynton
).  The court in 
Boynton
 also stated, however, that  "[a]lthough marriage is a fundamental right, every regulation relating to the prerequisites for marriage is not necessarily subjected to the 'strict scrutiny' test applicable to fundamental rights."  112 Ill. 2d at 368.  In the present case, plaintiff Waterson's fundamental rights are not violated because the mandatory arbitration fee does not impinge upon choices about marriage or family life.  The United States Supreme Court has invalidated only state fees that have made it impossible for litigants seeking to vindicate fundamental rights to utilize the court system.  
Boddie v. Connecticut
, 401 U.S. 371, 380-81, 28 L. Ed. 2d 113, 120-21, 91 S. Ct. 781, 787-88, (1971) (
Boddie
).  In 
Boddie
, the court struck down a divorce court filing fee only because under state law, the fee did not provide an exception for indigence.  401 U.S. at 382-83, 28 L. Ed. 2d at 121-22, 91 S. Ct. at 788-89.  

In the instant case, Waterson did not allege that he could not afford to pay the mandatory arbitration fee.  To the contrary, he alleged that he paid the fee.  Others who might not be able to afford the fee nevertheless would still have access to the courts by suing as poor persons.  See 735 ILCS 5/5-105, 5-107 (West 1998). The mandatory arbitration fee did not bar Waterson from filing a petition for dissolution of marriage.  Absent a total bar to the vindication of his rights, strict scrutiny of the mandatory arbitration fee is not warranted.  See 
Boddie
, 401 U.S. at 382-83, 28 L. Ed. 2d at 121-22, 91 S. Ct. at 788-89.  Accordingly, the strict scrutiny standard does not apply in this case.  The challenged legislation fulfills the rational relationship requirement.

From the foregoing discussion, it is clear that the mandatory arbitration fee is sufficiently related to the maintenance and operation of the Illinois court system as a whole and survives the constitutional challenges to the charged fee raised by plaintiffs.  The circuit court's grant of defendants' motion to dismiss and denial of plaintiffs' motion for summary judgment, therefore, must be affirmed.

Affirmed.

SOUTH and BARTH, JJ., concurring.

FOOTNOTES
1:
For example, the 1999 statistical summary published in the Annual Report of the Illinois Courts reveals that 21,567 Cook County civil cases were disposed of by arbitration, exceeding, when compared with cases in each category, the numbers of cases disposed of in chancery, probate, tax and adoption cases, and approaching 85% of dissolution of marriage dispositions.  Administrative Office of the Illinois Courts, 1999 Annual Report of the Illinois Courts, Statistical Summary 29.