NOTICE

Decision filed 10/24/13. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2013 IL App (5th) 120456

NO. 5-12-0456

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| ANDREA G. SMITH-SILK and THOMAS J. KOZIACKI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 12-L-152 |
| KURT PRENZLER in His Official Capacity as Treasurer of Madison County, MARK VON NIDA, in His Official Capacity as Circuit Clerk of Madison County, CHARLES SUAREZ, in His Official Capacity as Treasurer of St. Clair County, and KAHALAH DIXON, in Her Official Capacity as Circuit Clerk of St. Clair County, | ) ) ) ) ) ) ) ) | |
| | ) | Honorable |
| Defendants-Appellees. | ) ) | Lloyd A. Cueto, Judge, presiding. |

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Spomer and Justice Welch concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Andrea G. Smith-Silk and Thomas J. Koziacki, individually and on behalf of all others similarly situated, filed a complaint in the circuit court of St. Clair County against defendants, Kurt Prenzler, in his official capacity as treasurer of Madison County, and Mark Von Nida, in his official capacity as circuit clerk of Madison County (Madison County defendants), along with Charles Suarez, in his official capacity as treasurer of St. Clair County, and Kahalah Dixon, in her official capacity as circuit clerk of St. Clair County (St. Clair County defendants), in which they challenged a $5 "neutral site fee" (fee) charged to all litigants in Madison County and St. Clair County, sought a refund of the fee paid by

1

named plaintiffs, as well as an injunction against the collection of additional fees, and requested class certification. After a hearing, the circuit court found the fee constitutional and dismissed plaintiffs' complaint against defendants. Plaintiffs now appeal. The Madison County defendants have filed a cross-appeal, but only in the alternative should we find the fee unconstitutional. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3     On June 13, 2000, our General Assembly passed Public Act 91-811, codified as the Neutral Site Custody Exchange Funding Act (Act) (55 ILCS 82/1 to 99 (West 2008)), which authorizes county boards to establish by ordinance an additional filing fee of between $1 and $8 in all civil cases to defray the cost of operating neutral site custody exchange centers. 55 ILCS 82/15 (West 2008). Section 5 sets forth the reasons for passage of the Act as follows:

> "§ 5.  Legislative findings.  The General Assembly finds that the domestic relations area of law, and particularly child custody matters, frequently involves seemingly minor disputes between individuals that escalate into major social and legal problems without the intervention of neutral parties; these problems often result in emotional damage to the children involved and create an extra burden for the courts; there are compelling reasons for providing neutral sites for parents to exchange the physical custody of a child for purposes of visitation; and not-for-profit charitable organizations can make a substantial contribution to the expeditious implementation of child custody and visitation orders in this State."  55 ILCS 82/5 (West 2008).

Pursuant to the Act, in 2005, Madison County passed an ordinance imposing a $4 fee on all civil filings in order to support a neutral site exchange in Madison County. In 2008, the ordinance was amended to increase the fee to $5. St. Clair County also passed an ordinance imposing a $5 fee on all civil filings in order to support a neutral site exchange in St. Clair County.

2

¶ 4    On March 23, 2012, plaintiffs filed their complaint in the circuit court of St. Clair County, seeking a finding that the Act is unconstitutional, an injunction against collecting additional fees, and a refund of all fees collected, which would require class certification. In response, the St. Clair County defendants filed a motion to dismiss in which they argued they were immune from prosecution pursuant to section 2-203 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-203 (West 2008)).  The Madison County defendants filed a motion to dismiss or transfer venue to Madison County for the claims against Madison County, a motion to sever the claims of the Madison County defendants and St. Clair County defendants, a motion to strike class action allegations, and a motion to dismiss on the grounds that (1) the fee is constitutional, (2) the Madison County defendants are immune from suit, and (3) plaintiffs failed to comply with Illinois pleading requirements.

¶ 5    On June 12, 2012, all motions were argued with all parties present and represented by counsel.  The circuit court took the matter under advisement.  On July 6, 2012, the trial court entered an order denying the St. Clair County defendants' motion to dismiss on the basis that the Tort Immunity Act did not apply because plaintiffs did not allege a tort.  The trial court also denied the Madison County defendants' motion to sever and motion to transfer venue. The trial court found the fee constitutional, noting that a rational basis exists for collection of the fee in that the fee assists the court in enforcing court orders, reduces litigation, and promotes judicial economy.

¶ 6    On August 2, 2012, plaintiffs filed a motion to reconsider and for clarification. Plaintiffs argued that there was no order dismissing the case and, thus, they were unsure as to the status of the case.  Plaintiffs further argued that "by taking up the issue of constitutionality, without motion or briefing, [p]laintiff has been deprived of notice and the opportunity to be heard on the ultimate issue in this case, the constitutionality or

3

unconstitutionality of the neutral site fee."  Plaintiffs also argued that a finding of constitutionality was contrary to our supreme court's holding in *Crocker v. Finley*, 99 Ill. 2d 444, 459 N.E.2d 1346 (1984).  On August 20, 2012, the Madison County defendants filed a response to plaintiffs' motion to reconsider and for clarification in which they argued that the constitutionality of the fee was raised by the Madison County defendants in their motion to dismiss and it was proper for the trial court to make a ruling on the constitutionality of the fee.

¶ 7    On October 4, 2012, a hearing was conducted on plaintiffs' motion to reconsider and for clarification, after which the trial court entered an order denying all motions to dismiss. The trial court also found the fee constitutional, dismissed the case, and entered judgment for defendants and against plaintiffs.  Plaintiffs now appeal.  The Madison County defendants have filed a cross-appeal in the alternative.

¶ 8                                    ANALYSIS

¶ 9    Plaintiffs contend that the fee charged to them and all litigants who pay filing or appearance fees in Madison County and St. Clair County pursuant to the Act and to the corresponding ordinances is not a fee, but is in reality a tax.  Plaintiffs do not appeal the denial of defendants' motions to dismiss, but appeal what they call the *sua sponte* dismissal of the action and the finding of constitutionality of the fee.  Plaintiffs recognize the positive intentions behind the filing fee, but argue the legislature may not impose such fees on litigants where the funds collected ultimately go into the county treasury to fund what they allege is essentially a general welfare program.

¶ 10   We first address plaintiffs' argument that the trial court improperly dismissed the action *sua sponte*.  Here, the record shows that the Madison County defendants filed a motion to dismiss on the basis that the fee was constitutional.  Plaintiffs responded to the motion, and a hearing was held on all pending motions.  All parties were present and participated in

4

arguments. Therefore, the trial court did not *sua sponte* rule on the constitutionality of the fee, but was ruling on an issue specifically raised by the Madison County defendants. Furthermore, even assuming *arguendo* that the trial court made a *sua sponte* ruling on the constitutionality of the fee, it was not improper for the trial court to do so.

¶ 11    Under the rational basis test, a court may on its own initiative articulate facts necessary to justify a legislative classification. *Mount Prospect State Bank v. Village of Kirkland*, 126 Ill. App. 3d 799, 802, 467 N.E.2d 1142, 1145 (1984). The question of whether a rational basis for the classification exists is a question of law. *Mount Prospect State Bank*, 126 Ill. App. 3d at 802, 467 N.E.2d at 1145. It is appropriate when ruling on a motion to dismiss for a court on its own initiative to consider the issue of whether a rational basis exists for the classification. *Mount Prospect Bank*, 126 Ill. App. 3d at 802, 467 N.E.2d at 1145. We believe the trial court correctly addressed the constitutionality of the fee, and we find no error in the procedural undertakings of the trial court in reaching and ruling on the question.

¶ 12    Addressing the substance of the trial court's dismissal, we again note that the question of whether a rational basis for a legislative classification exists is a question of law. Because constitutionality is a pure question of law, the standard of review is *de novo*. *Davis v. Brown*, 221 Ill. 2d 435, 443, 851 N.E.2d 1198, 1204 (2006); *Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637, 640 (1997).

¶ 13   Section 15 of the Act provides as follows:

"§ 15.  Fund; fee; administration.

(a) In any county, a neutral site custody exchange fund may be established by the passage of an ordinance by the county board.

(b) In each county in which a county board has enacted an ordinance authorizing a neutral site custody exchange fund to be established, the county board shall set a fee to be collected by the clerk of the circuit court on all civil case filings

5

of not less than $1 nor more than $8 to be paid by the plaintiff at the time of the filing of the case and by the defendant at the time of filing an appearance. The county board shall review the amount of the fee on an annual basis and shall increase the amount of the fee, not to exceed the $8 maximum, if the demand for neutral site custody exchanges requires additional funding.

(c) In each county in which a county board has enacted an ordinance authorizing a neutral site custody exchange fund to be established, the clerk of the circuit court shall charge and collect a neutral site custody exchange fund fee as established by the county ordinance. The fee shall be paid by the parties to the action at the time of filing the first pleading in all civil cases. The fees shall not be charged in any proceeding commenced by or on behalf of a unit of local government.

The fees shall be in addition to all other fees and charges of the clerk, shall be assessable as costs, shall be remitted by the clerk monthly to the county treasurer, and shall be deposited monthly by the county treasurer in the neutral site custody exchange fund established under this Section. Each such clerk shall commence the charging and collection of the fee upon receipt of written notice from the county board that a neutral site custody exchange fund has been established."  55 ILCS 82/15 (West 2008).

The instant case presents a matter of statutory interpretation in that the statute states that the $5 charge is a "fee," whereas plaintiffs contend it is, in fact, a tax.

¶ 14    The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04, 732 N.E.2d 528, 535 (2000). Courts, therefore, should consider a statute in its entirety, keeping in mind the subject it addresses and the legislature's objective in enacting it. *People v. Davis*, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002). The best indication of legislative

6

intent is the statutory language, giving that language its plain and ordinary meaning. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 479, 639 N.E.2d 1282, 1287 (1994). Statutes carry a strong presumption of constitutionality. *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 120, 760 N.E.2d 953, 956 (2001). The Act specifically calls the charge a fee, but plaintiffs nevertheless argue that the charge is actually a tax, not a fee. In support thereof, plaintiffs rely on *Crocker v. Finley*, 99 Ill. 2d 444, 459 N.E.2d 1346 (1984).

¶ 15    In *Crocker*, the plaintiffs challenged the constitutionality of a $5 fee charged to all petitioners in dissolution of marriage proceedings. The $5 fee was assessed in addition to the usual filing fees and, pursuant to statute, was collected to fund shelters and other services for victims of domestic violence. Our supreme court struck down the statute, finding the $5 charge violated the Illinois Constitution's due process and equal protection clauses because there was no rational relationship between the imposition of the fee and the litigants. The supreme court noted that the services were available to all adults and their dependents who are the subjects of domestic violence, and there was no requirement that the recipients of the services be married or divorced. Yet the legislature chose to tax dissolution petitioners as a means of funding the programs, thereby causing members of that class to bear the cost of maintaining this public welfare program, while excluding other classes of taxpayers who would also benefit from the programs. *Crocker*, 99 Ill. 2d at 456-57, 459 N.E.2d at 1351-52.

¶ 16    However, our supreme court also made it clear in *Crocker* that court filing fees and litigation taxes may be properly imposed if done so for purposes "relating to the operation and maintenance of the courts." *Crocker*, 99 Ill. 2d at 454, 459 N.E.2d at 1351. Explaining the provision securing the right to collect court filing fees, the supreme court stated:

> " ' " 'The constitution does not guarantee to the citizen the right to litigate without expense, but simply protects him from the imposition of such terms as unreasonably and injuriously interfere with his right to a remedy in the law or impede the due

7

administration of justice; ***.' " ' (*Ali v. Danaher* (1970), 47 Ill. 2d 231, 236[, 265 N.E.2d 103] (quoting *Williams v. Gottschalk* (1907), 231 Ill. 175, 179, [83 N.E. 141,] and *Adams v. Corriston* (1862), 7 Minn. 456, 461); [citation].)" *Crocker*, 99 Ill. 2d at 455, 459 N.E.2d at 1351.

The $5 fee in *Crocker* was too remote from any court-related purpose to withstand constitutional analysis. The fee in the instant case, however, is distinguishable from the $5 fee in *Crocker* because here, the fee does not fund a general welfare program as plaintiffs contend, but is specifically related to improved operation of the courts.

¶ 17     Section 5 of the Act specifically states:

"§ 5. Legislative findings. The General Assembly finds that the domestic relations area of law, and particularly child custody matters, frequently involves seemingly minor disputes between individuals that escalate into major social and legal problems without the intervention of neutral parties; these problems often result in emotional damage to the children involved and *create an extra burden for the courts*; there are compelling reasons for providing neutral sites for parents to exchange the physical custody of a child for purposes of visitation; and not-for-profit charitable organizations can make a substantial contribution to the expeditious implementation of child custody and visitation orders in this State." (Emphasis added.) 55 ILCS 82/5 (West 2008).

The General Assembly was not acting arbitrarily or capriciously when enacting this legislation. The stated purpose of the Act is not only to protect children, but also to lessen the burdens on courts caused by domestic disputes which can erupt during physical exchanges of children. Thus, the Act bears a rational relationship to the public interest and passes the rational relationship test.

¶ 18     We find the instant case similar to *Ali*, cited in the quote above from *Crocker*. In *Ali*,

8

our supreme court upheld a $1 fee imposed on every litigant for the maintenance and operation of the county law library as constitutional and found it insignificant that all persons paying the library fee might not actually use the library facilities in the particular litigation. The *Ali* court emphasized that the library remained available to litigants if needed and found the presence of such facilities conducive to the administration of justice and may have constituted an improvement. *Ali*, 47 Ill. 2d at 237, 265 N.E.2d at 106.

¶ 19    Similarly in *Rose v. Pucinski*, 321 Ill. App. 3d 92, 746 N.E.2d 800 (2001), our colleagues in the First District upheld the funding of a mandatory arbitration program through the imposition of a $10 fee for all circuit court civil filings (735 ILCS 5/2-1009A (West 1998)), including a marriage dissolution case that did not qualify for mandatory arbitration. In finding that fee constitutional, the *Rose* court noted that "the creation of a mandatory arbitration system benefits the overall administration of justice by easing the backlog of cases in circuit courts." *Rose*, 321 Ill. App. 3d at 98, 746 N.E.2d at 805.

¶ 20    In the instant case, we agree with the trial court that the fees charged by both Madison County and St. Clair County have a rational basis in that the fees allow for the creation of neutral site custody exchanges, thereby reducing the burden on courts caused by litigation stemming from custody exchanges run amok. By providing parents with neutral sites to physically exchange their children, counties are reducing litigation and promoting judicial economy. Accordingly, the fees challenged herein by plaintiffs are sufficiently related to the operation of the Illinois court system and survive the constitutional challenge raised by plaintiffs.

¶ 21                                   CONCLUSION

¶ 22    For the foregoing reasons, we affirm the order of the circuit court of St. Clair County dismissing the action. Because of our decision, we need not consider the Madison County defendants' cross-appeal.

9

¶ 23    Affirmed.

2013 IL App (5th) 120456

NO. 5-12-0456

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| ANDREA G. SMITH-SILK and THOMAS J. KOZIACKI, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 12-L-152 |
| KURT PRENZLER in His Official Capacity as Treasurer of Madison County, MARK VON NIDA, in His Official Capacity as Circuit Clerk of Madison County, CHARLES SUAREZ, in His Official Capacity as Treasurer of St. Clair County, and KAHALAH DIXON, in Her Official Capacity as Circuit Clerk of St. Clair County, | ) ) ) ) ) ) ) ) ) | Honorable Lloyd A. Cueto, |
| Defendants-Appellees. | ) | Judge, presiding. |

**Opinion Filed**: October 24, 2013

**Justices**: Honorable Richard P. Goldenhersh, J.

Honorable Stephen L. Spomer, P.J., and
Honorable Thomas M. Welch
Concur

**Attorneys for Appellants**: Thomas G. Maag, Peter J. Maag, Maag Law Firm, LLC, 22 W. Lorena Ave., Wood River, IL 62095

**Attorneys for Appellees**: Philip J. Lading, Anthony L. Martin, Lawrence Hall, Sandberg, Phoenix & von Gontard, P.C., 101 West Vandalia, Suite 300, Edwardsville, IL 62025 (for Kurt Prenzler and Mark Von Nida)

Alvin C. Paulson, Becker, Paulson, Hoerner & Thompson, P.C., 5111 West Main Street, Belleville, IL 62226 (for St. Clair County, Charles Suarez, and Kahalah Dixon)